## Norfolk

JAMES EDWARD TAITANO

v.

COMMONWEALTH OF VIRGINIA

No. 0032-86

Decided July 7, 1987

344

COUNSEL

Paul M. Lipkin (Robert H. Anderson, Jr., Mary G. Commander, Goldblatt, Lipkin, Cohen, Anderson & Legum, P.C., on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLE, J.** — James Edward Taitano was tried by a jury and convicted of first-degree murder and the use of a firearm in the commission of a felony. He contends on this appeal that the conviction should be reversed because (1) the Commonwealth's peremptory challenges were racially motivated in violation of his sixth and fourteenth amendment rights, and (2) the Commonwealth's failure to furnish an alleged exculpatory statement of one of its witnesses violated his due process rights. Finding no error, we affirm.

## I. *Peremptory Challenges*

In the course of impaneling the jury, the Commonwealth used its four peremptory challenges to strike four black males from the panel. Taitano used his four peremptory challenges to strike three white males and one white female. The resulting panel consisted of six white males, one white female, two black males, three black females, and one alternate, a white male. After the selection of the jury and before opening statements, Taitano, a black male, moved the court to dismiss the jury and impanel a new jury on the ground that the peremptory challenges made by the Commonwealth were racially motivated. His motion was overruled.[1] Defendant renewed his motion after trial and prior to sentencing. An evidentiary hearing was held on June 4, 1985, at which time the Commonwealth attorney explained his reasons for peremptorily striking the four black males. He struck two men because they lived in high crime areas and were approximately the same age as the defendant. A third juror was struck because he lived approximately eight blocks from where the defendant was arrested, he was about the same age as the defendant, he had been struck from a jury the week before, and he came to court that day dressed as if he were going to work at the shipyard. The Commonwealth attorney used his final strike to eliminate from the panel a man whose personal appearance concerned him, and who lived less than two blocks from where the defendant was arrested and near members of defendant's family. The trial court concluded that the Commonwealth's strikes were not racially motivated and denied Taitano's motion for a new trial.

■ Taitano's first contention is that the trial court erred in overruling his motion for a new trial. We disagree. On appeal of a criminal conviction this court must view the evidence in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. *Crumble v. Commonwealth*, 2 Va. App. 231, 233, 343 S.E.2d 359, 361 (1986). A conviction will be affirmed unless it appears from the evidence that it is

---

[1] *Batson v. Kentucky*, 476 U.S. 99 (1986) was argued before the United States Supreme Court on December 12, 1985, and decided on April 30, 1986. The trial judge in this case, therefore, ruled as he did without the benefit of the *Batson* decision. The *Batson* decision, however, applies retroactively to all cases still pending on direct review as of April 30, 1986, even though the decision represents a "clean break" with the past. *Griffith v. Kentucky*, ____ U.S. ____, 107 S. Ct. 708 (1987).

plainly wrong or without evidence to support it. *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

■ The question whether the Commonwealth's peremptory strikes were racially motivated is controlled by the decision of the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986). In *Batson*, the Court reaffirmed the principle first recognized in *Swain v. Alabama*, 380 U.S. 202 (1965), that the equal protection clause is violated by the purposeful or deliberate exclusion of blacks from jury participation. The *Batson* decision, however, rejected the evidentiary requirement set forth in *Swain*, which required a defendant to show a history of systematic use of peremptory challenges to exclude blacks. In *Batson* the Court held that a defendant could establish a *prima facie* case of purposeful discrimination in the selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's own trial. 476 U.S. at ___, 106 S. Ct. at 1722.

■ Under *Batson*, a defendant may make out a *prima facie* case of purposeful discrimination by showing that "the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id.* at 1721. To establish a *prima facie* case, the defendant must first show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant may rely on the fact that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Id.* at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). Finally, the defendant must show that these facts, together with any other relevant circumstances, raise an inference that the prosecutor used peremptory challenges to exclude jurors on account of their race. *Id.*

> Once the defendant makes the requisite showing, the burden shifts to the State to explain adequately the racial exclusion. The State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. Rather, the State must demonstrate that "permissible racially neutral selection criteria and procedures have produced the monochromatic result."

*Id.* at 1721 (citations omitted).

 For purposes of this appeal we assume, without deciding, that Taitano made out a *prima facie* case of purposeful discrimination by ·the Commonwealth.[2] The Commonwealth attorney, however, provided racially neutral explanations for his peremptory strikes. To satisfy *Batson*, the Commonwealth attorney's explanation need not rise to the level justifying exercise of a challenge for cause. It is not enough, however, for the Commonwealth attorney to merely state that he challenged jurors of the defendant's race on the assumption that they would be partial to the defendant because of their shared race. *Batson*, 476 U.S. at ___, 106 S.Ct. at 1723. Nor may the Commonwealth attorney rebut the defendant's *prima facie* case by making general assertions either denying that he had a discriminatory motive or "affirming his good faith in individual selections." *Id.* (citations omitted). The Commonwealth attorney must articulate a neutral explanation related to the particular case to be tried.

In the instant case, the Commonwealth attorney articulated clear and specific non-racial reasons for striking each juror. With respect to each of the jurors struck, the Commonwealth attorney stated that he was concerned because they lived near the defendant or near the scene of the crime, or in areas of "high crime" generally. The Commonwealth attorney also considered the age, dress, and demeanor of the prospective jurors in exercising his peremptory challenges. These specific, neutral reasons are sufficient to rebut a *prima facie* case of purposeful discrimination. *Cf. United States v. Mathews*, 803 F.2d 325, 329-30 (7th Cir. 1986); *People v. Simpson*, 121 A.D.2d 881, 881-82, 504 N.Y.S.2d 115, 117 (1986); *Brueno-Hernandez v. State*, 724 P.2d 1132, 1135 (Wyo. 1986). The Commonwealth attorney did not simply make general assertions denying any discriminatory motive. *Cf. Clark v. City of Bridgeport*, 645 F. Supp. 890, 898 (D. Conn. 1986). The jury panel selected consisted of seven white jurors and five black

---

[2] Other courts have refused to find purposeful discrimination where, as in this case, blacks remained on the jury panel after the peremptory challenges had been exercised. *See State v. Peck*, 719 S.W.2d 553, 556 (Tenn. Crim. App. 1986); *State v. Weatherspoon*, 719 S.W.2d 304, 307 (Tenn. Crim. App. 1986); *State v. Moore*, 490 So. 2d 556, 558 (La. Ct. App. 1986); *cf. Commonwealth v. McCormick*, 519 A.2d 442, 446 (Pa. Super. 1986); *Weekly v. State*, 496 N.E.2d 29, 31 (Ind. 1986); *Phillips v. State*, 496 N.E.2d 87, 89 (Ind. 1986); *Clay v. State*, 716 S.W.2d 751, 754 (Ark. 1986).

jurors. Furthermore, the case itself presented no racial issues. Both the defendant and the victim were black, as were the eyewitnesses who testified at trial. Cf. *Commonwealth v. McKenrick*, 514 A.2d 144, 151 (Pa. Super. 1986). We find no error in the trial court's holding that the peremptory challenges were not racially motivated.

## II. *Discovery Issue*

Prior to trial, Taitano made a motion for discovery, requesting, *inter alia*, "all information of whatever form, source, or nature which tends to exculpate the defendant either through indication of his innocence or the potential impeachment of any government witnesses, which the Commonwealth or its agents has or knows about." In response to this request the Commonwealth attorney stated that "[n]o evidence exists to exculpate the defendant as the person who killed James Perkins Pope."

The appellant contends that the Commonwealth attorney had in his possession a statement containing exculpatory evidence given by Keith H. W. Preston to the Norfolk police one day after the shooting of James Pope, and that the failure to give him the statement was a violation of his right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963).

Taitano first discovered the existence of Preston's statement when they were both inmates in the Norfolk jail after Taitano's trial, while Taitano was awaiting sentencing. On June 27, 1985, he filed a motion for a new trial, stating that he had discovered new and material evidence since the trial; that the evidence was so material that it would probably produce a different result; and that the Commonwealth had in its possession knowledge that there was a witness who gave a statement to the Commonwealth which impeached the key witness for the prosecution. The trial judge scheduled a hearing on the motion on July 23, 1985, which was continued to December 19, 1985, to allow time for the trial transcript to be prepared.

Taitano does not dispute the fact that Preston's statement, standing alone, is inculpatory and not exculpatory. He contends that a reading of Preston's statement together with the testimony of a key Commonwealth witness, Martin Griffin, creates doubt as to the ability of Griffin to have seen what he claims to have seen if

Preston's version of the events is correct. He argues that Griffin's testimony was the key to the Commonwealth's case and had he been able to challenge Griffin's credibility with these additional contradictions, the jury might have disregarded Griffin's testimony in its entirety.

■ There is no constitutional right to discovery in criminal cases and statements made by prospective Commonwealth witnesses to police officers in connection with the investigation or prosecution of a case are expressly excluded from discovery by the accused by Rule 3A:11(b)(2) of the Rules of the Supreme Court of Virginia. *See Hackman v. Commonwealth*, 220 Va. 710, 713-14, 261 S.E.2d 555, 558 (1980).

■ However, in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is *material* either to guilt or to punishment." (emphasis added). *Accord Lowe v. Commonwealth*, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977), *cert. denied*, 435 U.S. 930 (1978); *Stotler v. Commonwealth*, 2 Va. App. 481, 483, 346 S.E.2d 39, 40 (1986). Most recently, in *United States v. Bagley*, 473 U.S. 667 (1985), the Supreme Court stated that the nondisclosed evidence is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome [of the trial]." *Id.* at 682; *see Naulty v. Commonwealth*, 2 Va. App. 523, 527, 346 S.E.2d 540, 543 (1986).

■ *Bagley* requires a court to assess the reasonable probability of a different result "in light of the totality of circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response." *Robinson v. Commonwealth*, 231 Va. 142, 152, 341 S.E.2d 159, 165 (1986) (quoting *Bagley*, 473 U.S. at 683). To accomplish this, the evidence adduced at trial must be compared with what the defendant contends could have been adduced.

In denying the motion for a new trial, the trial judge stated:

I think the testimony at the trial and the statement given prior to trial by the witness Griffin are amazingly similar knowing the way these things usually go, and I would also say the same thing with regard to the description given by Preston as to what happened comparing it with what Griffin said in his statement during the course of the investigation before trial and then describing the events are amazingly similar, more than you would usually expect. . . .

* * *

The last two shots, it is quite clear to me from reviewing the testimony, is contrary to [defense counsel's] argument. The last two shots were not those which played a part in the death of the decedent. That had already happened. Those shots, the fatal shots to the decedent, it seems to me, had already been fired before Martin Griffin was even pulled back into the house, and I just - I can only conclude that the last two shots had to do with the chase that went on. . . . [T]he ultimate question, of course, is would any of this have made any difference, and I have no difficulty whatsoever in concluding that it would have made no difference whatsoever. The testimony about how the decedent was killed was clear.

In light of the totality of the circumstances, Preston's written statement could not have benefited the defense and was not exculpatory. We have compared the statements given to the police by Griffin and Preston. The Commonwealth attorney found himself in a similar position when he determined that there was no exculpatory evidence in his possession. We do not find any exculpatory evidence in the statements. Both statements are highly inculpatory and both unequivocally state that Taitano shot and killed James Pope.

Assuming *arguendo* that Preston's statement was exculpatory, the fact remains that the discrepancy as to Griffin's whereabouts when the last two shots were fired, when viewed in light of all the evidence, is insufficient to undermine confidence in the outcome of the trial. Griffin's testimony was cumulative in that it corroborated Corprew's testimony that Taitano fired his shotgun and pistol at Pope, that Taitano was the only person observed with a weapon, and that Pope was shot and killed. Corprew's testimony

placed Taitano at the scene of the crime. The information that Preston could have provided the defense would not have altered, but would in fact have corroborated that fact.

Whatever minor discrepancies there were between Preston's written statement and Griffin's trial testimony, the information which Preston could have provided the defense was fundamentally at odds with Taitano's alibi defense. In light of that fact, the possible impeachment benefit which might have resulted from disclosure of Preston's statement is insignificant. Accordingly, even assuming Preston's statement was exculpatory, the trial court correctly ruled that had the prosecutor disclosed Preston's written statement to the defense, it would have had no effect on the outcome of the trial.

The testimony of Robert Corprew and Martin Griffin, together with the evidence of threats made by appellant against the victim and the appellant's apparent motive for the killing, all support the conclusions of the trial judge. The *Bagley* test requires that we be convinced from a review of the entire record that the jury *probably* would have reached a different result had the statement in question been made available to the defense. We are no so convinced. *Cf. United States v. Peltier*, 800 F.2d 772, 774-80 (8th Cir. 1986); *Patterson v. Black*, 791 F.2d 107, 110-11 (8th Cir. 1986); *United States v. Serna*, 799 F.2d 842, 848 (2d Cir. 1986); *United States v. Kehm*, 799 F.2d 354, 358-59 (7th Cir. 1986); *United States v. McKellar*, 798 F.2d 151, 153-55 (5th Cir. 1986).

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

Barrow, J., and Hodges, J., concurred.