**Alexandria**

REZNICK CURRIE, a/k/a

REGINALD CURTIS

v.

COMMONWEALTH OF VIRGINIA

No. 1121-88-4

Decided April 17, 1990

COUNSEL

Randal M. Reves, for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Reznick Currie contends that his rape conviction should be reversed because (1) the trial judge erred in prohibiting defense counsel from discussing in closing argument to the jury the victim's post-incident sexual conduct, and (2) the Commonwealth failed to provide the defense with exculpatory information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Finding no error, we affirm the conviction.

The evidence establishes that two weeks after the victim's boyfriend was killed in a construction accident, she invited Currie to

become her roommate in order to help defray expenses. Currie moved into her apartment on December 2. The victim testified that on the evening of December 4, Currie forced her to engage in acts of sexual intercourse and oral sodomy.

On cross-examination, without objection from the Commonwealth, the victim responded affirmatively to defense counsel's question, "Did you sleep with anyone within a week [after] this rape?" Later, after the Commonwealth's redirect examination and a brief recess, the Commonwealth argued outside the presence of the jury that under Virginia's Rape Shield statute this evidence was irrelevant to the issue of consent and should not have been admitted.[1] The trial judge refused to instruct the jury to disregard

---

[1] Code § 18.2-67.7 provides:

A. In prosecutions under this article, general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted. Unless the complaining witness voluntarily agrees otherwise, evidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant and is:

1. Evidence offered to provide an alternative explanation for physical evidence of the offense charged which is introduced by the prosecution, limited to evidence designed to explain the presence of semen, pregnancy, disease, or physical injury to the complaining witness's intimate parts; or

2. Evidence of sexual conduct between the complaining witness and the accused offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation or through the use of the complaining witness's mental incapacity or physical helplessness, provided that the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case; or

3. Evidence offered to rebut evidence of the complaining witness's prior sexual conduct introduced by the prosecution.

B. Nothing contained in this section shall prohibit the accused from presenting evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused. If such evidence relates to the past sexual conduct of the complaining witness with a person other than the accused, it shall not be admitted and may not be referred to at any preliminary hearing or trial unless the party offering same files a written notice generally describing the evidence prior to the introduction of any evidence, or the opening statement of either counsel, whichever first occurs, at the preliminary hearing or trial at which the admission of the evidence may be sought.

C. Evidence described in subsections A and B of this section shall not be admitted and may not be referred to at any preliminary hearing or trial until the court first determines the admissibility of that evidence at an evidentiary hearing to be held before the evidence is introduced at such preliminary hearing or trial. The court shall exclude from the evidentiary hearing all persons except the accused, the complaining witness, other necessary witnesses, and required court personnel. If the court determines that the evidence meets the requirements of subsections A and B of this section, it shall be admissible before the judge or jury trying the case in the ordinary course of the preliminary hearing or trial. If the

the evidence already admitted but ruled, over Currie's objection, that defense counsel was precluded from mentioning in closing argument the post-incident sexual conduct. Currie argues that evidence of the victim's post-incident sexual conduct with another individual was relevant to his claim of consent and that the defense should have been permitted to discuss such evidence in closing argument, especially in view of the Commonwealth's failure to make a timely objection to its introduction.

■ We conclude that the trial judge did not err in refusing to allow defense counsel to argue the post-incident sexual conduct evidence to the jury. The admissibility of evidence of the post-incident sexual conduct is governed by Code § 18.2-67.7, and is the very kind of evidence the statute renders inadmissible. Code § 18.2-67.7 prohibits the use of "general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct." The statute permits evidence of specific instances of prior sexual conduct in limited circumstances not applicable here. Prior sexual conduct is defined in Code § 18.2-67.10(5) as "any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, excluding the conduct involved in the offense alleged under this article."

■ Before the adoption of Code § 18.2-67.7, Virginia law prohibited the introduction of evidence of specific instances of the victim's sexual conduct with persons other than the accused when such evidence was offered solely to establish the probability of the victim's consent to sexual relations with the accused. *Wynne v. Commonwealth*, 216 Va. 355, 218 S.E.2d 445 (1975). The reason for the prohibition was that such evidence "injects collateral issues into the case which would divert the jury's attention from the real issue, the guilt or innocence of the accused." *Id.* at 356-57, 218 S.E.2d at 446. The enactment of Code § 18.2-67.7 codified this result. *See Winfield v. Commonwealth*, 225 Va. 211, 220-21, 301 S.E.2d 15, 21 (1983). Where, as here, the only purpose offered for introducing evidence of the victim's prior sexual conduct is to establish her propensity to engage in consensual sexual acts or to impeach her general credibility, such evidence is rendered inad-

court initially determines that the evidence is inadmissible, but new information is discovered during the course of the preliminary hearing or trial which may make such evidence admissible, the court shall determine in an evidentiary hearing whether such evidence is admissible.

missible under the statute. Kneedler, *Sexual Assault Law Reform in Virginia — A Legislative History*, 68 Va. L. Rev. 459, 496 (1982). Currie's contention that the Commonwealth somehow put the victim's post-incident sexual conduct in issue by eliciting from her the fact of her boyfriend's death two weeks prior to the incident is without merit.

Although the Commonwealth failed to object in a timely manner and consequently allowed to be admitted evidence that the victim had slept with someone a week after the rape, the trial judge was not required to compound the error by allowing Currie to argue the inadmissible evidence to the jury. Furthermore, we find that Currie suffered no appreciable prejudice as a result of that ruling. Although Currie was precluded from raising the issue in closing argument, he had been allowed to impeach the victim's credibility with otherwise inadmissible evidence.

Currie next argues that the Commonwealth was required to provide the defense with copies of the victim's statements. At a post-trial hearing, the evidence established that a report was written by the investigating officer who interviewed the victim at the hospital shortly after the assault. The officer's report appeared in the presentence report as part of the official version of the offense. Although the statements in the report mirrored the victim's trial testimony in most details, they varied as to their description of the precise sequence of events, the number of sexual acts which occurred, and the intensity of the physical assaults. Currie contends that these were inconsistent statements which could have been used to impeach the credibility of the victim's trial testimony and which should have been disclosed pursuant to his *Brady* motion. We conclude that the trial judge did not err in denying Currie a new trial.

As a general rule the accused is not entitled to obtain statements made by prospective Commonwealth witnesses to police officers in connection with the investigation or prosecution of a criminal case. Rule 3A:11(b)(2); *Taitano v. Commonwealth*, 4 Va. App. 342, 349, 358 S.E.2d 590, 593 (1987). In *Brady v. Maryland*, however, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 473 U.S. at 87; *see also Stover v. Commonwealth*, 211 Va. 789, 795, 180 S.E.2d 504, 509 (1971), *cert. de-*

*nied*, 412 U.S. 953 (1973). Under *Brady*, the Commonwealth is required to deliver that evidence which is favorable to the accused and which, if suppressed, would deprive the accused of a fair trial. *United States v. Bagley*, 473 U.S. 667, 675 (1985). The nondisclosed evidence is considered "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682. The Court is required to assess the reasonable probability of a different result in light of the totality of circumstances. *Taitano*, 4 Va. App. at 349, 358 S.E.2d at 594.

The investigating officer in this case testified at the post-trial hearing that when he interviewed the victim at 5:35 a.m. in the hospital, she "was very distraught and near hysterical." The officer further testified that, although his report reflected the events as the victim had relayed them he "had a great deal of difficulty understanding her" and he did not intend that his report would reflect her statements to him word for word. *See Bellfield v. Commonwealth*, 215 Va. 303, 307, 208 S.E.2d 771, 774 (1974), *cert. denied*, 420 U.S. 965 (1975) (defense not permitted to impeach victim with police notes not shown to be accurate verbatim transcripts).

A comparison of the victim's statements compiled in the officer's report with the victim's trial testimony reveals that the victim's initial account to the officer is "consistent in every significant particular" with her trial testimony regarding Currie's conduct. *Payne v. Commonwealth*, 220 Va. 601, 607, 260 S.E.2d 247, 251 (1979). Both accounts were highly inculpatory and both unequivocally stated that Currie, whom she knew as Reginald Curtis, forced her to engage in repeated acts of sexual intercourse and oral sodomy, threatening to kill her if she did not comply. *See Taitano*, 4 Va. App. at 350, 358 S.E.2d at 594. Both accounts further recite a similar sequence of events, varying only in the level of detail of what is described. Although the victim's trial testimony omitted the description, present in the officer's report, that Currie "assaulted her, knocking her to the floor . . . land[ing] on her stomach with a knee. . . . [and] hit[ting] her several times in the head with his fist" when she attempted to escape, the victim did testify that Currie "pushed [her] back away from the door. [She] fell down. Then Currie told [her] not to try it again or [she] was going to die." Moreover, any discrepancy between the number

of sexual acts related in the officer's report and the victim's testimony at trial was rendered inconsequential by Currie's pretrial statement corroborating the victim's trial account that repeated acts of forced intercourse and oral sodomy occurred. *See Payne*, 220 Va. at 607, 260 S.E.2d at 251. Whatever minor discrepancies existed between the victim's trial testimony and the statements in the investigating officer's report, they had little impeachment value on the question of consent, which was the central issue in the case, and could not have affected the outcome of the trial.

For the foregoing reasons, the judgment of conviction is affirmed.

*Affirmed.*

Keenan, J., and Willis, J., concurred.