COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Bray and Fitzpatrick
Argued at Alexandria, Virginia


RODNEY S. SMALL, JR.

v.          Record No. 0200-94-4          MEMORANDUM OPINION*
                                          BY JUDGE JOSEPH E. BAKER
COMMONWEALTH OF VIRGINIA                       JUNE 27, 1995

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   Arthur B. Vieregg, Jr., Judge

          Frank W. Romano, Assistant Public Defender (Office
          of the Public Defender, on brief), for appellant.

          Robert H. Anderson, III, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on brief),
          for appellee.


     Rodney S. Small, Jr. (appellant) appeals from a judgment of
the Circuit Court of Fairfax County (trial court) that approved
jury verdicts convicting him of three counts of robbery and three
counts of use of a firearm in the commission of those felonies.
We granted an appeal limited to whether the trial court erred in
denying appellant's motions for mistrial or continuance, the said
motions arising out of the Commonwealth's late disclosure of
evidence that may have supported appellant's defense of duress.
At oral argument, appellant agreed that the issue requires this
Court to decide whether there was a reasonable probability that
the result would have been different if the "exculpatory
evidence" had been available and admitted into evidence at trial.

_____

     *Pursuant to Code § 17-116.010, this opinion is not

designated for publication.

Viewing the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom, the record discloses that on September 30, 1991, Michael Wills (Wills), Stephon Wilson (Wilson), and appellant completed a planned robbery of Greenan & Sons jewelry store. A part owner, Walter Greenan (Walter) and his nephew Eddie Greenan (Eddie) were in the store at the time of the robbery.

Shortly before the execution of their plan, appellant had voluntarily entered a car driven by Wilson and in which Wills was a passenger. Appellant owed Wills $3,500 that he had received from a drug sale he had made on behalf of Wills. When appellant entered the car, Wills did not demand payment of the money due him but instead suggested that appellant might clear his debt by assisting Wilson and Wills in the commission of a robbery. The three men then drove around viewing potential subjects to be robbed and decided that the Greenan & Sons jewelry store would be their target.

Appellant alone entered the store and pretended to be a customer looking for a ring for his girlfriend.[1] Appellant left the store without making a purchase and shortly thereafter, armed

---

[1]Appellant denied entering the store prior to the robbery and stated that Wills was the first to go in and appraise the conditions. An F.B.I. report, hereafter referred to and upon which appellant relies, shows Wilson to have confirmed that appellant was first to enter.

with a gun, returned with Wills and Wilson. Appellant leaped over a counter toward Walter and put a gun to Walter's head, threatening to "blow out [his] brains if [he] failed to comply with appellant's demands."

The robbers forced the victims to open the cash register from which they took money and jewelry. That act was followed by appellant grabbing Walter's hair and forcing him to reveal other places from which the robbers took more money. All three robbers were heard "snickering" as they left the store, each holding a bag as they ran toward a waiting automobile.

At trial, appellant testified that he was forced by the other robbers to participate in the crimes by bodily harm threats made against him and members of his family. Appellant stated that these threats resulted from appellant's failure to pay Wills the $3,500 owed from his earlier drug sale. At trial, appellant testified in his behalf. Also testifying for the defense were appellant's mother (Jennette) and her boyfriend (Moon). Appellant, Jennette, and Moon testified that shortly after the drug sale, two men forced their way into Jennette's house. At the time, Jennette, appellant, and Moon were in the house. They said that the men wore ski masks and carried automatic guns. Appellant identified one of these men as Wilson and testified that Wilson pointed a gun at appellant and threatened to kill him. Appellant, Jennette, and Moon all testified that the men tied up Jennette and Moon, taped their mouths, placed pillow

- 3 -

cases over their heads, and stole $75 from Moon.  Moon and Jennette said they heard appellant say to the intruders, "please don't kill me."  Appellant further testified that a siren sounded that caused the men to flee and shortly thereafter the police came to Jennette's house.  Appellant did not tell the police that Wilson and the other man had been there and threatened to kill anyone.  Appellant further testified that as he and Wilson waited in the car, Wills entered the store.  Appellant said that he told Wilson, "Man, I don't want to do this," to which Wilson replied, "Don't make me take you back and shoot your mother in front of you and shoot you."

The record discloses the following colloquy that occurred on the morning of the second day of the trial:

> THE COURT:    Is there anything before we call in the jury?
>
> [THE PROSECUTOR]:  Well, counsel and I were talking about somewhat of an exculpatory nature, evidence of an exculpatory nature that came to our attention late this morning actually.
>
> And I don't know, are we finished talking about that or --
>
> [DEFENSE COUNSEL]:  Yes, sir.  I have -- [the prosecutor] said that he had talked to a detective from D.C., Detective Wilson, who made him aware of some information from -- that Investigator Wilson talked to Stephon Wilson, who was the third person involved in this robbery.  And some of the interview with Investigator Wilson, which just came to [the prosecutor's] notice this morning, appeared to be of an exculpatory nature.  He made me aware of that.
>
> I have no problem with the timing of that.  I'm convinced that [the prosecutor] just became aware of it now and I don't have any complaints about the timing of it or it being turned over when it was.

The evidence described as being "of an exculpatory nature" was given to an F.B.I. agent in the District of Columbia and the agent's notes[2] reflect that Wilson, a codefendant in the Greenan & Sons robbery, made the following statement during an interview of Wilson by the agent stationed in the District of Columbia:

Regarding the robbery of the GREENAN AND SON'S [sic] jewelry store located on Backlick Road in Fairfax, Virginia, WILSON provided the following information:

WILSON advised that on the day that he, MICHAEL WILLS and RODNEY SMALLS [sic] robbed the GREENAN AND SON'S [sic] jewelry store, they drove to the jewelry store in a stolen 300ZX which had been stolen prior to the robbery. WILSON advised that they pulled into the parking lot, all three riding in the 300ZX. WILLS intimidated SMALLS [sic] into going into the jewelry store to make an initial inquiry about an expensive piece of jewelry. WILSON advised that SMALLS [sic] went into the jewelry store and then he and WILLS followed him into the store moments later. WILSON stated that upon entering the store he recalls SMALLS [sic] telling the sales people that this store was being held up. WILSON held one of the sales people down on the ground by kneeling on his back. WILSON advised that he held this one individual down throughout the entire robbery and that SMALLS [sic] and WILLS were responsible for grabbing the actual jewelry. WILSON recalls a lady who was apparently a customer of the store departing as they were arriving and remembers watching her get into her vehicle and sit in the parking lot as if she was aware of the robbery as it was happening. WILSON yelled out to SMALLS [sic] and WILLS that they should hurry up so that they could leave quickly as there was

_____

[2]The notes were not made an exhibit; however, on appellant's motion, the trial court specifically ordered that they were part of the record.

- 5 -

somebody that was watching them.

(Emphasis added.) District of Columbia Detective Wilson, who was present when the alleged exculpatory statement was made to the F.B.I. agent, recalled that the use of the word "intimidated" was more of ridicule than threat.

After the Commonwealth had presented its evidence in chief, and appellant had presented his corroborative evidence and testified himself, appellant, for the first time moved the trial court for a mistrial or a continuance to give him an opportunity to bring Wilson to court to testify.

Appellant does not claim that the Commonwealth withheld exculpatory information sought pursuant to a duly filed motion for discovery. Nor does he assert that any Fairfax governmental agency possessed that information prior to the second day of his trial. He clearly stated at trial that he did not have "any complaints about the timing of it or it being turned over when it was." He argues, however, that the prosecutor is charged with constructive notice of Wilson's statement contained in the F.B.I. files.

The trial court found that even if the information is exculpatory, evidence in the possession of the District of Columbia police is not imputable to the Fairfax police. We agree. See Knight v. Commonwealth, 18 Va. App. 207, 212, 443 S.E.2d 165, 168 (1994), where this Court held that constructive knowledge of information in the possession of police is not

attributed to the prosecutor when possession of the knowledge is in a law enforcement agency of a different jurisdiction.  See also Conway v. Commonwealth, 12 Va. App. 711, 715, 407 S.E.2d 310, 312 (1991).

Suppression by the prosecution of evidence favorable to an accused may be a violation of due process if the evidence is material to either guilt or punishment.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  But the evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  Id. at 87; Taitano v. Commonwealth, 4 Va. App. 342, 349, 358 S.E.2d 590, 594 (1987).  United States v. Bagley, 473 U.S. 667 (1985), relied upon by appellant, is in accord.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.  Robinson v. Commonwealth, 231 Va. 142, 151, 341 S.E.2d 159, 164 (1986).

If Wilson had been present and testified in accord with the F.B.I. agent's notes, he would first have corroborated Walter's testimony that appellant had first entered the store alone, thereby contradicting appellant's denial.  To corroborate appellant's testimony, Wilson then would have had to say he was one of the two men who entered Jennette's house, threatened to kill appellant and his family, and stole $75 from Moon.  Then later, concerning the conversation that took place outside the jewelry store, Wilson would have had to confirm appellant's

testimony that appellant told him, "Man, I don't want to do this," and that Wilson replied, "Don't make me take you back and shoot your mother in front of you and shoot you." The likelihood of such testimony was beyond a "reasonable probability."

We hold that even if the prosecutor were charged with constructive knowledge of the matter contained in the F.B.I. agent's notes, there is not a reasonable probability that had it been given to appellant in advance of the trial the result of the proceeding would not have been different. See Epperly v. Booker, 235 Va. 35, 41, 366 S.E.2d 62, 63 (1988).

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.