517 S.E.2d 246

**Hurcus Jerome WILLIAMS**

v.

**COMMONWEALTH of Virginia.**

**Record No. 2982–97–1.**

Court of Appeals of Virginia,
Norfolk.

Aug. 3, 1999.

Lenita J. Ellis, Norfolk, for appellant.

Steven A. Witmer, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: BENTON, and ANNUNZIATA, JJ., and OVERTON,* Senior Judge.

ANNUNZIATA, Judge.

Hurcus Jerome Williams ("appellant") was convicted by bench trial of capital murder, robbery, and two counts of using a firearm in the commission of a felony. On appeal, appellant contends the trial court committed reversible error: (1) by admitting an accomplice's out-of-court confession to police; and (2) by refusing to provide his accomplice's confession to him before ruling on its admissibility. We disagree and affirm appellant's convictions.

## I.

## FACTUAL BACKGROUND

The evidence at appellant's trial established the following relevant facts, stated in the light most favorable to the Commonwealth. *See Smith v. Commonwealth*, 27 Va.App. 357, 359, 499 S.E.2d 11, 12 (1998). In the early morning hours of December 1, 1996, Vareck Griffin sustained three gunshot wounds and died on the premises of a crack house on Colley Avenue in Norfolk, Virginia. Immediately before the shooting, Griffin was alone in the apartment, keeping watch over a stash of cocaine and selling the drug to customers from the premises. Appellant had visited the premises to obtain various amounts of cocaine three times that day and knew Griffin was alone in the apartment.

As a result of questioning by officers of the Norfolk Police Department on April 16, 1997, Damyel Harris confessed appellant had enlisted his help to rob Griffin while Griffin conducted the sale of drugs from the Colley Avenue premises. Harris gave a statement to police, which provides in pertinent part:

---

* Judge Overton participated in the hearing and decision of this case prior to the effective date of his retirement on January 31, 1999 and thereafter by his designation as a senior judge pursuant to Code § 17.1–401, recodifying Code § 17–116.01:1.

[M]e and Hurcus met up one night. He came and got me; I was standing on the corner at 35th and Gosnold. He told me that we could do a hit, get some crack, a little bit of money. So, I was like where? I said, do the guys—I asked him where was it at. He said Park Place. I said no, I'm too hot out here; I been chilling out. I said, do the guys know me? So he was like, no, they don't know neither one of us. So, we went around to the house, walked up the stairs. I knocked on the door; Hurcus stood on the side.

When the guy opened the door, he had a gun in his hand. Hurcus punched the guy; the gun fell. Both of them went reaching for the gun. I grabbed a bottle and hit the guy in the head. Then Hurcus grabbed the guy. We shut the door; Hurcus grabbed the guy, took him to the back. He told me to look up under the couch and grab the dope and look on the table and grab the scales. So when I was reaching for the scales, I heard a gunshot, one gunshot. And I heard the guy say, please don't kill me. So then I went up under the couch and found the drugs. That's when I heard two more gunshots about five seconds later.

Then Hurcus came running out the door. He went straight out the door and I yelled his name. He told me not to yell his name; he kept running across the street.

When the Commonwealth called Harris as a witness at appellant's trial, Harris refused to testify, asserting his Fifth Amendment privilege. As a result, the Commonwealth offered into evidence the transcript of Harris' statement. Appellant objected on the ground that admission of the statement violated his Sixth Amendment constitutional right to confront witnesses against him. The Commonwealth called Investigator Donald Norrell to establish the circumstances under which Harris made his statement. Appellant's counsel advised the court that she had not previously seen the statement and requested an opportunity to review it before she cross-examined Norrell. The court refused counsel's request, stating appellant would be given a chance to review the statement if the court ruled the statement to be admissible evidence. At the close of the Commonwealth's examination, appellant's

counsel again objected to the procedure by which the court would determine the statement's admissibility, arguing that she needed to review the statement "in order to adequately represent" her client. The court overruled the objection and, after reviewing the entire statement, ruled it was sufficiently reliable to be admitted.

In addition to Harris' statement, the Commonwealth also produced several witnesses whose testimony implicated appellant in the instant offenses. Jesse Keene met appellant on the street in December of 1996 and testified that appellant stated he had gone to the Colley Avenue crack house with Harris and that he was "laying low" because Griffin "got killed" while they were there. Jason Carter recalled a conversation in his cell block in which appellant admitted that he went to the Colley Avenue premises with Harris, that Griffin was on the premises alone, that he wrestled a gun away from Griffin, and that he shot Griffin. Thomas Liggins, who shared a cell with appellant, testified that appellant stated that he was in jail because he shot someone, that he was with another person at the time of the shooting, that the other person struck the victim with a bottle, and that appellant had to shoot the victim because appellant was not wearing a mask.

## II.

## ADMISSION OF THE OUT-OF-COURT CONFESSION

Assuming without deciding that the admission of Harris' confession violated appellant's constitutional right to confrontation, *see Lilly v. Virginia*, 527 U.S. 116, ———–——, 119 S.Ct. 1887, 1900–01, 144 L.Ed.2d 117 (1999), we find that error to have been harmless. When a trial court admits evidence in violation of the United States Constitution, the court's error is a constitutional one. *See Jenkins v. Commonwealth*, 254 Va. 333, 336, 492 S.E.2d 131, 132 (1997). " '[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' " *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

We decide whether the erroneous admission of evidence was sufficiently prejudicial to require reversal " 'on the basis of our own reading of the record and on what seems to us to have been the probable impact' " on the fact finder. *Arnold v. Commonwealth,* 4 Va.App. 275, 282, 356 S.E.2d 847, 851 (1987) (quoting *Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)). *See McDonnough v. Commonwealth,* 25 Va.App. 120, 132, 486 S.E.2d 570, 576 (1997).

We may declare the erroneous admission of evidence harmless beyond a reasonable doubt when the "record contains 'overwhelming' evidence of guilt." *Scott v. Commonwealth,* 25 Va.App. 36, 42, 486 S.E.2d 120, 123 (1997). *See Jenkins v. Commonwealth,* 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992), *cert. denied,* 507 U.S. 1036, 113 S.Ct. 1862, 123 L.Ed.2d 483 (1993) (concluding that the admission of a defendant's confession was harmless error based on the Commonwealth's presentation of overwhelming evidence of guilt, which consisted of other confessions to close friends, fellow jail inmates, and investigators); *McDonnough,* 25 Va.App. at 132–33, 486 S.E.2d at 576 (concluding that the admission of a statement in violation of the Confrontation Clause was harmless based on the sum of other testimonial and physical evidence of the defendant's guilt). Although corroborating evidence is not relevant in determining the reliability of a statement under a Sixth Amendment analysis, such evidence is appropriately considered when determining whether the erroneous admission of a statement was harmless. *See Idaho v. Wright,* 497 U.S. 805, 823, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

Based on our review of the record, we conclude that any error in admitting Harris' confession was harmless beyond a reasonable doubt because of the overwhelming evidence of appellant's guilt on each of his four convictions. As to the robbery conviction, the elements of robbery are: (1) the use of violence, or the threat thereof, against the victim, and (2) the theft of property from the victim's person or in the

victim's presence. *See* Code § 18.2–58; *Briley v. Commonwealth,* 221 Va. 532, 543, 273 S.E.2d 48, 55 (1980), *cert. denied,* 451 U.S. 1031, 101 S.Ct. 3022, 69 L.Ed.2d 400 (1981). As to appellant's conviction of capital murder, the Commonwealth had the burden of proving a "willful, deliberate, and premeditated killing of any person in the commission of robbery or attempted robbery." Code § 18.2–31.

Ignoring Harris' confession, the Commonwealth presented the following evidence of appellant's guilt at trial. Appellant visited the Colley Avenue premises several times on the day of Griffin's murder to purchase drugs. Later that day, appellant learned of Griffin's sole guardianship of the drugs on the premises. That night, Griffin died after sustaining three gunshot wounds on the premises, at least two of which were inflicted at a range of two to three feet. Detroy Woolard, another occupant of the premises, noticed that the drugs and the only gun kept on the premises were missing when he returned and discovered Griffin's body. Further, the testimony of three witnesses established appellant's role in the robbery and murder of Griffin. According to Jesse Keene, appellant admitted he entered the Colley Avenue premises with Harris and then "laid low" because Griffin was murdered during the encounter. Jason Carter testified that appellant admitted he went to the Colley Avenue premises with Harris, wrestled a gun away from Griffin, and shot Griffin with the gun. Finally, Thomas Liggins recalled appellant's statement that he shot someone, that he was with another person at the time of the shooting and that the other person had struck the victim with a bottle, and that he had to shoot the victim to avoid being identified. Police found multiple empty bottles on the floor of the apartment where Griffin was killed. Appellant's counsel was given full opportunity to cross-examine these witnesses and exercised that right as to each of them.

Based on our review of the record and the overwhelming evidence of appellant's guilt, we conclude that the admission of Harris' confession was harmless beyond a reasonable doubt.

III.

## REFUSAL TO DISCLOSE WITNESS' STATEMENT TO APPELLANT

■ Appellant next contends the trial court erred by refusing to disclose or order the Commonwealth to disclose Harris' statement to his counsel before ruling on its admissibility at trial. We disagree.

■ "As a general rule the accused is not entitled to obtain statements made by prospective Commonwealth witnesses to police officers in connection with the investigation or prosecution of a criminal case." *Currie v. Commonwealth*, 10 Va.App. 204, 208, 391 S.E.2d 79, 82 (1990). *See* Rule 3A:11(b)(2) ("This subparagraph does not authorize the discovery or inspection of statements made by Commonwealth witnesses or prospective Commonwealth witnesses to agents of the Commonwealth....."). This rule is subject to the exception enunciated by the United States Supreme Court in *Brady v. Maryland* that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The content of Harris' confession to police was plainly inculpatory. Although Harris' confession contained minor inconsistencies with the remaining body of evidence against appellant, the confession was consistent "in every significant particular." *Currie*, 10 Va.App. at 209–10, 391 S.E.2d at 82–83 (finding that a police report was not subject to disclosure under *Brady*, notwithstanding its minor inconsistencies with the victim's trial testimony, because such inconsistencies had little impeachment value with respect to the central issue of the case). Furthermore, the text of Harris' confession is internally consistent and, for that reason, was of little impeachment value. Indeed, after reviewing the statement, appellant's counsel raised no further objection to the statement's admissibility and did not seek to further cross-examine Norrell regarding the interview that produced the statement.

Finally, there is no evidence Harris made the statement involuntarily or in ignorance of his constitutional rights, factors which may otherwise give rise to a basis for impeachment. Thus, *Brady* affords no basis for disclosure of Harris' confession. We, therefore, find no error in the trial court's refusal to require disclosure of Harris' statement prior to ruling on its admissibility.

For the reasons set forth in this opinion, appellant's convictions are affirmed.

*Affirmed.*

BENTON, Judge, dissenting.

I.

The Confrontation Clause of the Sixth Amendment to the United States Constitution applies in state prosecutions and provides as follows: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

The [United States Supreme] Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that "a primary interest secured by [the provision] is the right of cross-examination." In short, the Clause envisions "a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

These means of testing accuracy are so important that the absence of proper confrontation at trial "calls into question the ultimate 'integrity of the fact-finding process.'"

*Ohio v. Roberts,* 448 U.S. 56, 63–64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (citations and footnotes omitted). "The admission of the untested confession of [Damyel Harris] violated [Hurcus

J. Williams'] Confrontation Clause rights." *Lilly v. Virginia,* — U.S. ——, ——, 119 S.Ct. 1887, 1901, 144 L.Ed.2d 117 (1999).

The record established that the police arrested Damyel Harris for numerous offenses, "like more than 11 charges," shortly before the interrogation occurred. The detective who interrogated Harris was investigating another homicide unrelated to this case and had been searching for Harris in connection with that homicide. The detective testified that "[w]hen we started asking [Harris] about the [unrelated] homicide, [Harris] started talking about a different homicide and started giving details, and that's when [the detective] . . . realized that [Harris] wasn't talking about [the unrelated homicide] but another homicide [implicating Hurcus Jerome Williams]."

At trial, the Commonwealth offered in evidence Harris' statement. The Confrontation Clause violation could not be clearer.

> During a custodial interrogation, [Harris] told police officers that [Williams] committed the charged murder. The prosecution introduced . . . these statements at trial without making [Harris] available for cross-examination. . . . [T]hat is a paradigmatic Confrontation Clause violation.

*Lilly,* 527 U.S. at ——, 119 S.Ct. at 1903 (Scalia, J., concurring in part and concurring in the judgment).

The Commonwealth argues, however, that the statement was trustworthy. I disagree. When a witness is shown to be unavailable, the Confrontation Clause bars the use of that witness' statement inculpating the accused unless the statement "bears adequate 'indicia of reliability.' " *Id.* at 66, 100 S.Ct. 2531. The United States Supreme Court has treated an accomplice's confession that inculpates an accused as hearsay requiring "a 'showing of particularized guarantees of trustworthiness.' " *Lee v. Illinois,* 476 U.S. 530, 543, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (citation omitted). Noting that the categorization of a statement "as a simple 'declaration against penal interest' " was "too large a class for meaningful Con-

frontation Clause analysis," *id.* at 544 n. 5, 106 S.Ct. 2056, the Court stated:

> Our cases recognize that this truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination. As has been noted, such a confession "is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally.... More than this, however, the arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence."

*Id.* at 541, 106 S.Ct. 2056 (citation omitted). *See also Ellison v. Commonwealth,* 219 Va. 404, 408, 247 S.E.2d 685, 688 (1978) (holding "it is settled in Virginia that, while a declaration against penal interest is recognized as an exception to the hearsay rule, such a declaration made out of court by a dead or otherwise unavailable witness is admissible only upon a showing that the declaration is reliable").

Nothing about Harris' statement or the circumstances surrounding the giving of the statement imbues it with indicia of trustworthiness. As the Supreme Court noted, " 'the arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.' " *Lee,* 476 U.S. at 541, 106 S.Ct. 2056 (citation omitted).

The trial judge's finding that Harris' statement was trustworthy was premised upon a faulty analysis. His findings included the following:

> It appears to me that there is *sufficient corroboration here,* the overall situation for me *to allow its admission....* I'm not commenting on its probative value ultimately but there's enough here, *the specific address is identified, the*

*situation as I know it with Mr. Williams knowing there was only one person there, is corroborated, the fact that all of the beer sitting around, empty bottles is corroborated, the long hallway at the entrance is corroborated.*

There are several things here that are open to question but that's an evidentiary matter not a matter of reliability. In short, after Detective Norrell's testimony and my review of this statement, I don't think there's any question that it's admissible. The statement is clearly against Mr. Harris' penal interest. He knew that he was going to this location to rob someone, by his own admission.

He also testified that he was alert, knew what he was doing and he knew it was against his penal interest when it was made and *its reliability is established by several things, first of all, the fact that it is voluntary.* This man, as I alluded to before, had been in trouble before. He told the detective he knew his rights, he was advised of his rights thoroughly on this form.

Detective Norrell testified he signed yes to each one of these items, and *there are statements made by this witness which are consistent with the testimony of other witnesses and also consistent with the physical evidence, therefore, I'm going to admit.*

(Emphasis added.)

The Supreme Court has ruled that the factors considered significant by the trial judge are irrelevant to the inquiry of whether Harris' confession, which incriminated Williams, was admissible under the Sixth Amendment. A finding that "the confession was . . . voluntary for Fifth Amendment purposes, . . . does not bear on the . . . [Sixth Amendment inquiry] of whether the confession was also free from any desire, motive, or impulse [Harris] may have had either to mitigate the appearance of his own culpability by spreading the blame or to overstate [Williams'] involvement." *Lee,* 476 U.S. at 544, 106 S.Ct. 2056. Likewise, the existence of corroborating evidence does not support a finding that the confession was trustworthy.

In short, the use of corroborating evidence to support a hearsay statement's "particularized guarantees of trustworthiness" would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitting under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility. . . .

Moreover, . . . we [decline] to rely on corroborative physical evidence and indeed [have] rejected the "interlock" theory. . . .

*Idaho v. Wright,* 497 U.S. 805, 823–24, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Thus, the trial judge's decision to admit as evidence Harris' statement was based on findings irrelevant to the Sixth Amendment inquiry.

For the reasons that I have more fully stated in *Pitt v. Commonwealth,* 28 Va.App. 730, 766 n. 12, 508 S.E.2d 891, 909 n. 12 (1999) (Benton, J., concurring in part and dissenting in part), I would hold that Harris' statement was untrustworthy because of the circumstances in which it was made. " 'The circumstantial guarantees of trustworthiness . . . are based on those that existed at the time the statement was made and do not include those that may be added by using hindsight.' " *Wright,* 497 U.S. at 820, 110 S.Ct. 3139 (citation omitted). As I noted in *Pitt,* the custodial interrogation *itself* renders the statement untrustworthy. *See* 28 Va.App. at 766–67 n. 12, 508 S.E.2d at 909–11 n. 12. "[S]tatements made in response to police interrogation generally do not have inherent guarantees of reliability and trustworthiness." *State v. Hughes,* 244 Neb. 810, 510 N.W.2d 33, 38 (1993).

[O]ther courts generally consider as factors detracting from trustworthiness (1) whether the declarant was being questioned by the police, (observing that the statements were " 'given in response to the questions of police, who . . . no doubt knew what they were looking for, and [they] w[ere] not tested in any manner by contemporaneous cross-examination by counsel . . . .' "), (2) "whether the declarant was in police custody when the statement was made," (3) "whether

the declarant had a motive to mitigate his own criminal liability," and (4) "whether the declarant made the statement in response to leading questions."

*Pitt*, 28 Va.App. at 768, n. 12, 508 S.E.2d at 910–11 n. 12 (citations omitted).

The record fails to demonstrate that the Commonwealth satisfied its burden of proving Harris' statement trustworthy. Harris was in police custody when he made the statement. Harris was under arrest for eleven different criminal offenses; he was wanted for questioning for another murder; he was being interrogated in police custody; he had a motive to mitigate his own criminal conduct; and he made accusatory statements placing greater blame upon Williams while seeking to excuse his own conduct. *See Pitt*, 28 Va.App. at 766 n. 12, 508 S.E.2d at 909 n. 12. Furthermore, the Supreme Court has "consistently recognized [that] a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." *Lee*, 476 U.S. at 545, 106 S.Ct. 2056.

The Commonwealth, who maintains the burden of establishing trustworthiness, failed to prove that Harris did not make his statement in an attempt either to demonstrate his willingness to cooperate with the police in hopes of receiving some form of benefit or to shift blame onto Williams in hopes of deflecting liability for a crime in which Harris was intimately involved. *See Lee*, 476 U.S. at 544–45, 106 S.Ct. 2056 (noting the "reality of the criminal process, namely, that once partners in a crime recognize that the 'jig is up,' they tend to lose any identity of interest and immediately become antagonists"). The officer who interrogated Harris stated that Harris spoke about the murder at issue in this case while the officers were questioning him about another murder and "other crimes." The record does not establish that the police were unaware of Harris' role in Griffin's murder when they questioned him.

To meet its burden of excluding such possibilities, the Commonwealth obviously faced a daunting task. The statement itself clearly demonstrates that Harris was placing the entire blame for the murder on Williams and disavowing any prior knowledge of Williams' intent. The Commonwealth had to prove Harris' subjective motive without the benefit of examination at trial—Harris invoked his Fifth Amendment right not to testify. Because of the impossibility of this task and the significant potential for error, we should consider custodial statements of an accomplice, given under such circumstances, untrustworthy *per se* and incapable of being proven trustworthy for Sixth Amendment Confrontation Clause purposes absent extraordinary circumstances. *See People v. Watkins,* 438 Mich. 627, 475 N.W.2d 727, 746 (1991); *Hughes,* 510 N.W.2d at 38–41.

The Commonwealth also points to the voluntary and spontaneous nature of Harris' statement as indicia of its trustworthiness. As I have indicated, such an inquiry has little, if any, relevance concerning the Confrontation Clause right of an accused to rigorously examine the accomplice at trial. The Confrontation Clause protects an accused's right to conduct an examination that could uncover bias, spite, potential attempts for leniency, or a number of other motives which may have caused a declarant to willingly and voluntarily make a statement. The voluntariness of a statement clearly could serve to mask any number of motives that, if exposed during cross-examination, could cause the statement to be viewed less credibly by the fact finder. Harris' statement was admitted into evidence in the absence of vigorous examination, and it constituted the key and most persuasive evidence linking Williams to the murder. In view of all these circumstances, I would hold that the Commonwealth failed to provide an "affirmative reason, arising from the circumstances in which the statement was made [that] provides a basis for rebutting the presumption that ... [Harris'] statement is not worthy of reliance at trial." *Wright,* 497 U.S. at 821, 110 S.Ct. 3139. Simply put, the record fails to establish a basis to admit Harris' statement. *See Lilly.*

## II.

Confrontation Clause error is subject to harmless error analysis. *See Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). However, constitutional error is harmless only if "the beneficiary of the constitutional error ... prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chatman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As the Supreme Court has stated, "[t]he correct inquiry is whether, assuming that the damaging potential of the [evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431. *See also Olden v. Kentucky,* 488 U.S. 227, 232, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). Thus, "a harmless error analysis ... [is not] simply a sufficiency of the evidence analysis." *Hooker v. Commonwealth,* 14 Va.App. 454, 458, 418 S.E.2d 343, 345 (1992). Even if "the other evidence amply supports the ... verdicts, [error is not harmless when] the disputed testimony may well have affected the ... decision." *Cartera v. Commonwealth,* 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). An "emphasis and perhaps overemphasis, upon the [concept] of 'overwhelming evidence'" has the effect of clouding the relevant question of "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Chapman,* 386 U.S. at 23, 87 S.Ct. 824 (footnote and citations omitted).

Although the Commonwealth produced at trial three witnesses who testified that Williams made statements implicating himself in the murder, we cannot conclude that their testimony, standing alone and without Harris' statement, was sufficiently convincing that the trial judge would have found Williams guilty absent Harris' statement. Furthermore, the prejudicial impact of the improperly-admitted testimony was significant and undermines confidence in the verdict. Therefore, I cannot agree with the majority that the error was harmless beyond a reasonable doubt.

The first witness, Jesse Keene, testified that Williams informed him that he had been "lay[ing] low" because, when Williams and Harris went to the apartment, "the other kid that was there got killed in the process." Keene's testimony is insufficient to prove that Williams shot Griffin. Although the trier of fact arguably might infer from Keene's testimony that Griffin was shot while Williams and Harris were at the apartment and that either Williams or Harris committed the murder, it is impossible to determine from Keene's testimony who in fact shot Griffin. It is just as likely that Williams was "lay[ing] low" because he was present at the apartment when Harris shot Griffin (and therefore feared being accused of the murder) as that Williams was "lay[ing] low" because he shot Griffin.

Jason Carter testified that while he and Williams were in jail, he overheard Williams tell another prisoner that Williams had shot and killed Griffin. However, because Carter was Griffin's cousin, and Carter testified to being "close" to Griffin, we cannot conclude that the trier of fact would nonetheless have believed Carter's testimony, despite his bias, had Harris' statement been excluded.

Similarly, Thomas Liggins testified that while he and Williams were in prison, Williams told him that he and an accomplice attacked someone, that the accomplice struck the victim with a bottle, and that Williams shot the victim so that Williams would not be identified. Liggins admitted, however, to having been convicted of two felonies, of making a false statement, and to having charges pending against him at the time of Williams' trial. The testimony of convicted criminals who become jailhouse informants and "volunteer" their testimony for the government has its own unique aura of untrustworthiness and potential to undermine the integrity of the truth-seeking process.

We cannot conclude beyond a reasonable doubt that the trial judge would have believed the testimony of these witnesses and convicted Williams had he not been exposed to Harris' statement. The effect of Harris' statement inculpating

Williams on a trier of fact's view of the entirety of the evidence cannot be overstated. Evidence which the trier of fact would normally hold as inconclusive can suddenly become convincing when corroborated by the accusatory statement of one who was intimately involved in the execution of the crime. We, on appeal, cannot conclude how the trier of fact would have ruled had the body of evidence not contained such a statement. I would therefore reverse the conviction and remand for retrial without Harris' statement.

## III.

I further dissent from the majority's holding, which relies upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Currie v. Commonwealth*, 10 Va.App. 204, 391 S.E.2d 79 (1990), that because Harris' statement was not exculpatory as to Williams, the Commonwealth was under no obligation to disclose Harris' statement to Williams' counsel at trial before the trial judge ruled on its admissibility. *Brady* and *Currie*, which concern the Commonwealth's obligation to deliver to the accused exculpatory evidence within the government's possession, have no bearing on the evidentiary problem of which Williams complains.

The record established that during the trial the Commonwealth offered Harris as its witness. Harris invoked his right not to testify as guaranteed by the Fifth Amendment. The Commonwealth then offered as evidence Harris' statement without providing to Williams' attorney a copy of the statement. When Williams' attorney sought to have a copy of Harris' statement in order to address the issue of reliability, the prosecutor stated, "[i]t is not for [Williams' attorney] to argue whether the statement is reliable or not. That is a determination for you [, the trial judge,] to make." The trial judge ruled, "I agree" and denied Williams' attorney access to Harris' statement.

To establish a foundation for the statement's reliability, the Commonwealth then proved by the testimony of the detective the circumstances concerning the custodial interrogation of

Harris. Williams' attorney was deprived of the use of Harris' statement when cross-examining the detective. Without providing to Williams' counsel a copy of Harris' statement, the trial judge heard argument concerning the reliability and admissibility of the statement and ruled that the statement was admissible. Only then was Williams' counsel given a copy of Harris' statement.

*Brady* is relevant to this issue only to the extent the Supreme Court stated a fundamental principle that governs all criminal trials: "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." 373 U.S. at 87, 83 S.Ct. 1194. By requiring Williams' attorney to rebut the Commonwealth's argument concerning the trustworthiness of Harris' statement without the opportunity to review the statement itself, the trial judge denied Williams the right to effectively and fairly argue his case. The trial judge heard arguments and testimony concerning the circumstances surrounding the officers' interrogation of Harris, the crux of the trustworthiness issue. To effectively argue trustworthiness, Williams' attorney needed access to the product of the interrogation—Harris' statement.

The Commonwealth has established no harm that it would have endured by producing the document to Williams' counsel when the judge was considering admissibility. If the trial judge had deemed the revealed statement to be untrustworthy and therefore not admissible, the Commonwealth's case would not have been weakened by Williams' gained knowledge. Similarly, the Commonwealth cannot contend that it would have been harmed by the trial judge's ruling that the statement was trustworthy and admitting the statement, for that was the object of the Commonwealth's motion. To not order production of Harris' statement to Williams' attorney was plain error.

For these reasons, I would reverse the convictions and remand the case for a new trial.