COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton,* Judges Benton, Elder, Frank, Humphreys, Clements, Kelsey,
          McClanahan, Haley and Retired Judge Fitzpatrick**
Argued at Richmond, Virginia


ALAN LUGINBYHL, S/K/A
 ALAN KURT LUGINBYHL
                                                       OPINION BY
v.      Record No. 1333-04-4                      JUDGE JAMES W. HALEY, JR.
                                                       APRIL 4, 2006
COMMONWEALTH OF VIRGINIA



                            UPON REHEARING EN BANC

                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                             David T. Stitt, Judge

          Michael F. Devine (Devine & Connell, P.L.C., on briefs), for
          appellant.

          Stephen R. McCullough, Assistant Attorney General (Judith
          Williams Jagdmann, Attorney General, on brief), for appellee.



                                      I.

                            PROCEDURAL HISTORY

        This matter comes before the Court from a divided panel decision rendered on August 30,

2005, and reported as Luginbyhl v. Commonwealth, 46 Va. App. 460, 618 S.E.2d 347 (2005).

The trial court convicted appellant of drunk driving in violation of Code § 18.2-266.  The

question presented by appellant to the panel read as follows:

          Is the certificate of breath analysis produced specifically for use at
          trial to prove the guilt of the accused testimonial evidence and thus

_____

        * When the case was argued, Judge Fitzpatrick presided.  Judge Felton was elected Chief
Judge effective April 1, 2006.

        ** Judge Fitzpatrick participated in the hearing and decision of this case prior to the
effective date of her retirement on March 31, 2006.

constitutionally inadmissible when the analyst is not unavailable and there had not been a prior opportunity for cross-examination by the accused?

The panel affirmed the trial court's refusal to suppress (1) a written breath test analysis result and (2) an accompanying certificate which verified both the operability of the testing machine and the validity of the machine operator's license. The panel held that neither was "testimonial" evidence proscribed by the Confrontation Clause of the United States Constitution as addressed in Crawford v. Washington, 541 U.S. 36 (2004).

By order dated September 12, 2005, we granted appellant's petition for rehearing *en banc*, stayed the mandate of that decision, and reinstated the appeal.[1]

Upon rehearing *en banc*, we affirm appellant's conviction on grounds more narrow than, and independent of, the panel decision.

II.

FACTS

Pursuant to Rule 5A:8(c), the parties presented an agreed statement of facts, in lieu of a transcript, of the trial court proceedings. The following summary of the evidence contains quotations from that statement.

On November 25, 2003, Officer Darren Day was on patrol on Richmond Highway in Fairfax County.

> [H]e observed the three cars in front of him brake abruptly, in order to avoid an accident. Officer Day noticed a white station wagon had pulled onto Richmond Highway from a parking lot and was perpendicular to the lanes of travel. That vehicle remained in the road a few seconds and then made a slow right turn. The station wagon was weaving, and at one point missed hitting the curb by approximately two inches. The vehicle made a slow left turn into a shopping center, causing the vehicles approaching it to brake to avoid a collision. Those vehicles flashed their lights and honked their horns.

---

[1] 46 Va. App. 545, 620 S.E.2d 125 (2005).

- 2 -

Officer Day effected a traffic stop and identified the driver as the appellant.

>Officer Day detected a strong odor of alcoholic beverage about the defendant. The defendant's eyes appeared glassy and bloodshot. Mr. Luginbyhl's face was red, and he exhibited sluggish motor skills. When asked how much he had to drink, Mr. Luginbyhl responded, "I had a lot." He indicated that he had had approximately six to eight vodka drinks. The defendant began to fall forward as he stepped from his vehicle, so Officer Day put his hand on defendant's chest to steady him. The officer directed Mr. Luginbyhl to lean against the car for support. The defendant stated that he had consumed "6, 7 or 8 vodka drinks" which were of the size of a 12-ounce cup inside the vehicle. The defendant was cooperative in performing field sobriety tests. In performing the finger-to-nose test, the defendant attempted to touch his nose four times. He succeeded one time, and touched his cheek and forehead on other attempts. Which attempting to perform a one-legged stand test, the defendant stopped, began to cry, and stated: "I'm drunk; I'm an alcoholic."

Officer Day conducted a preliminary breath test at the scene. Subsequently, Mr. Luginbyhl agreed to take a breath analysis at the police station. Officer Caine, who was not present at trial, performed that analysis while Officer Day observed.

The analysis showed a blood alcohol concentration of 0.24%. Officer Caine executed the accompanying certificate. The certificate read:

>ATTEST:
>
>I CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF THE TEST CONDUCTED; THAT THE TEST WAS CONDUCTED WITH THE TYPE OF EQUIPMENT AND IN ACCORDANCE WITH THE METHODS APPROVED BY THE DEPARTMENT OF CRIMINAL JUSTICE SERVICES, DIVISION OF FORENSIC SCIENCE; THAT THE TEST WAS CONDUCTED IN ACCORDANCE WITH THE DIVISION'S SPECIFICATIONS; THAT THE EQUIPMENT ON WHICH THE BREATH TEST WAS CONDUCTED HAS BEEN TESTED WITHIN THE PAST SIX MONTHS AND FOUND TO BE ACCURATE; THAT PRIOR TO ADMINISTRATION OF THE TEST THE ACCUSED WAS ADVISED OF HIS RIGHT TO OBSERVE THE PROCESS AND SEE THE BLOOD ALCOHOL READING ON THE EQUIPMENT USED TO PERFORM THE BREATH TEST, AND THAT I POSSESS A VALID LICENSE

TO CONDUCT SUCH TEST, GIVEN UNDER MY HAND THIS
25TH DAY OF NOVEMBER, 2003.

Over objection, the trial court admitted the analysis and certificate pursuant to Code § 18.2-268.9.[2] The trial court convicted appellant of driving while intoxicated in violation of Code § 18.2-266 and sentenced him to 180 days in jail and a fine of $350. The entire fine and 170 of the days of the jail sentence were suspended.[3]

III.

DECISIONAL BASIS

Appellant maintains we should substantively address the Crawford issue decided in the panel opinion. We decline to do so.

"It is a well recognized principle of appellate review that constitutional questions should not be decided if the record permits final disposition of a cause on non-constitutional grounds." Keller v. Denny, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987). See also Volkswagen of America v. Smit, 266 Va. 444, 454, 587 S.E.2d 526, 532 (2003) ("[A] court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to decide the

---

[2] Code § 18.2-268.9 states in relevant part: "This certificate, when attested by the individual conducting the breath test, shall be admissible in any court in any criminal . . . proceeding as evidence of the facts therein stated and of the results of such analysis."

[3] At oral argument appellant maintained for the first time that the breath test analysis of 0.24% may have caused the trial court to enhance appellant's punishment to an effective jail sentence of 10 days. On the day of the offense, November 25, 2003, the penalty provisions of Code § 18.2-270, as applicable to Code § 18.2-266, provided for a mandatory minimum incarceration of 5 days.

That issue was not presented to the trial court and, accordingly, was not preserved for appeal as required by Rule 5A:18. Also, appellant does not ask this Court to invoke the ends of justice exception to Rule 5A:18, and "[t]his Court will not consider, *sua sponte*, an ends-of-justice argument under Rule 5A:18." Widdifield v. Commonwealth, 43 Va. App. 559, 564, 600 S.E.2d 159, 162 (2004) (en banc). Moreover, even if the appellant had preserved this issue below, it was not a question presented in the petition for appeal as required by Rule 5A:12(c), nor was the issue briefed as required by Rule 5A:20. Accordingly, the issue is defaulted, and we do not consider it. See Gregory v. Commonwealth, 46 Va. App. 683, 694, 621 S.E.2d 162, 168 (2005).

merits of the case."). A congruent principle is one that an appellate court decides cases "on the best and narrowest ground available." Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring).

Coupled with these principles of judicial prudence is the proposition that an appellate court may structure a decision upon an "assuming but not deciding" basis. Such a basis does not foreclose a future review of a constitutional issue and, moreover, does not bind those - here, potentially the Commonwealth - subject to the court's jurisdiction to the effect of a decision. Finally, the "assuming but not deciding" basis is useful for a "harmless error" analysis.

Thus, and as specifically applicable to the instant case, the Court in United States v. McClain, 377 F.3d 219, 222 (2d Cir. 2004), held:

> It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review, however, and Crawford does not suggest otherwise. See, e.g., Coy v. Iowa, 487 U.S. 1012, 1021, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988) (holding that denial of face-to-face confrontation is subject to harmless error review); United States v. Tropeano, 252 F.3d 653, 659 (2d Cir. 2001) ("[H]armless error analysis applies to evidentiary errors and to violations of the Confrontation Clause.").

See Crawford, 541 U.S. at 76 (Rehnquist, C.J., concurring in the judgment) (noting that the Crawford majority "implicit[ly] recogniti[zed] that the mistaken application of its new rule by courts which guess wrong as to the scope of the rule is subject to harmless-error analysis"); United States v. Williams, 429 F.3d 767, 774 (8th Cir. 2005) (assuming "that a Confrontation Clause error occurred," but holding "that the error in admitting [the hearsay] statement was harmless beyond a reasonable doubt," reasoning that "[t]he independent evidence . . . was so overwhelming" that the defendant's "conviction cannot be attributed to [the inadmissible] statement" (internal quotations omitted)); see also Pitt v. Commonwealth, 260 Va. 692, 696, 539 S.E.2d 77, 79 (2000) (assuming that the trial court's decision to admit the hearsay statement of a

co-conspirator violated the defendant's Sixth Amendment rights, but then holding that the error was harmless beyond a reasonable doubt because "the evidence as a whole, excluding [the hearsay] statement, overwhelmingly proved that [the defendant] is guilty," and, therefore, "there was no reasonable possibility that [the] statement might have contributed to [the defendant's] conviction"); Dearing v. Commonwealth, 260 Va. 671, 674, 536 S.E.2d 903, 904 (2000) (holding that, although the trial court violated the defendant's Sixth Amendment rights by admitting the hearsay statement of a co-conspirator, that error was harmless beyond a reasonable doubt).

Therefore, we assume without deciding that (1) the breath analysis result and (2) the accompanying certificate were "testimonial" and their introduction in evidence, despite Code § 18.2-268.9, was constitutional error under Crawford. Our decision thus relies upon the applicable "harmless error" standard of review alone.

IV.

ANALYSIS

In Corado v. Commonwealth, 47 Va. App. 315, 623 S.E.2d 452 (2005), we addressed the standard of review for harmless constitutional error.

> We begin our analysis by reiterating the heightened standard under which we review constitutional error for harmlessness. "When a trial court admits evidence in violation of the United States Constitution, the court's error is a constitutional one." "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." "We decide whether the erroneous admission of evidence was sufficiently prejudicial to require reversal on the basis of our own reading of the record and on what seems to us to have been the probable impact on the fact finder."

Id. at 323, 623 S.E.2d at 456 (quoting Williams v. Commonwealth, 30 Va. App. 378, 383, 517 S.E.2d 246, 249 (1999) (additional citations omitted)). See also Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) ("When a federal constitutional error is involved, a

reviewing court must reverse the judgment unless it determines that the error is harmless beyond a reasonable doubt." (citations omitted)).

In pertinent part, Code § 18.2-266 makes it "unlawful for any person to drive . . . a motor vehicle . . . while such person is under the influence of alcohol." The agreed statement of facts recites that "the driver of the vehicle was identified as the defendant" and that the defendant told Officer Day, "I'm drunk." This confession is corroborated, again quoting from the agreed statement of facts, because appellant "had a strong odor of alcohol," "glassy and bloodshot" eyes, and a "red face"; "exhibited sluggish motor skills"; and "fell forward as he stepped from his vehicle." Appellant told Officer Day he had "a lot to drink" and defined "a lot" as "6, 7 or 8 vodka drinks" the size of a 12-ounce cup in his vehicle. Appellant "attempted to touch his nose four times . . . [but only] . . . succeeded one time." While failing a one-legged stand test, the appellant began to cry and told Officer Day, "I'm an alcoholic." This evidence, without the breath analysis, proves guilt beyond a reasonable doubt.

Upon this record, assuming but not deciding that the trial court committed constitutional error by admitting the breath test analysis and its accompanying certificate, we conclude the error was harmless beyond a reasonable doubt.

Thus, appellant's conviction is affirmed.

Affirmed.

Benton, J., dissenting.

For the reasons I gave in Luginbyhl v. Commonwealth, 46 Va. App. 460, 478-85, 618 S.E.2d 347, 357-60 (2005) (Benton, J., dissenting), I would hold that admission of the evidence violated Alan Luginbyhl's rights as protected by the Confrontation Clause and, further, that the error was not harmless.

I.

This appeal challenges the admissibility of a certificate of breath analysis containing the attestation of a government employee who did not testify at trial. Luginbyhl contends that by admitting the certificate into evidence, the trial judge violated his Sixth Amendment right of confrontation.

The certificate of analysis, which the trial judge admitted in evidence over a hearsay objection, is signed by a "breath test operator" under the following attestation:

> I CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF THE TEST CONDUCTED; THAT THE TEST WAS CONDUCTED WITH THE TYPE OF EQUIPMENT AND IN ACCORDANCE WITH THE METHODS APPROVED BY THE DEPARTMENT OF CRIMINAL JUSTICE SERVICES, DIVISION OF FORENSIC SCIENCE; THAT THE TEST WAS CONDUCTED IN ACCORDANCE WITH THE DIVISION'S SPECIFICATIONS; THAT THE EQUIPMENT ON WHICH THE BREATH TEST WAS CONDUCTED HAS BEEN TESTED WITHIN THE PAST SIX MONTHS AND FOUND TO BE ACCURATE; THAT PRIOR TO ADMINISTRATION OF THE TEST THE ACCUSED WAS ADVISED OF HIS RIGHT TO OBSERVE THE PROCESS AND SEE THE BLOOD ALCOHOL READING ON THE EQUIPMENT USED TO PERFORM THE BREATH TEST, AND THAT I POSSESS A VALID LICENSE TO CONDUCT SUCH TEST, GIVEN UNDER MY HAND THIS 25TH DAY OF NOVEMBER, 2003.

These assertions were made to satisfy Code § 18.2-268.9. The record establishes, however, that Luginbyhl did not have the opportunity to cross-examine the breath test operator to test the veracity of his statements. Without dispute, the operator's attestation statements

constitute hearsay.  The issue in this case is whether that hearsay was testimonial and thus barred by the Sixth Amendment.

The Sixth Amendment of the Constitution of the United States provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The United States Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), recently interpreted the requirements of the Sixth Amendment by reviewing its text and the historical record.

Examining the historical background of the Sixth Amendment's Confrontation Clause, the Court held that "history supports two inferences about the meaning of the Sixth Amendment."  541 U.S. at 50.  The Court identified those inferences as follows:

> First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused. . . .  The Sixth Amendment must be interpreted with this focus in mind.
>
> \*     \*     \*     \*     \*     \*     \*
>
> The historical record also supports a second proposition:  that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.  The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.

Id. at 50, 53-54.  In view of this historical analysis, the Supreme Court overruled the reliability test set forth in Ohio v. Roberts, 448 U.S. 56 (1980), because of "its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude."  Crawford, 541 U.S. at 63.  The previously accepted reliability test allowed hearsay evidence to be admitted as long as it had "adequate 'indicia of reliability'" and the witness was unavailable.  Roberts, 448 U.S. at 66.  As the Court explained in Crawford:  "Where testimonial statements are

at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." 541 U.S. at 68-69. Thus, the Sixth Amendment gives a criminal defendant the right to confront testimonial evidence. Id.

In plain terms, Crawford describes a "core class of 'testimonial' statements" as including "affidavits," any "similar pretrial statements that declarants would reasonably expect to be used prosecutorially," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51-52. When governmental agents are involved, this concern is heightened. As the Crawford Court noted, the "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse -- a fact borne out time and again throughout a history with which the Framers were keenly familiar." 541 U.S. at 56 n.7.

The operator conducted the breath analysis and prepared the attestation solely to provide evidence in court to prove the facts necessary to convict Luginbyhl. This cannot be fairly disputed. Indeed, the attestation statement asserts the existence of seven facts or circumstances said to be true by the "breath test operator." Simply put, the certificate of blood analysis that was admitted in evidence in this case is testimonial under the narrowest of the Crawford definitions and, thus, falls squarely within the Crawford bar.

Luginbyhl accurately asserts that the "certificate . . . was a formalized, *ex parte* statement made by a government agent for the sole purpose of being used prosecutorially in court in lieu of his live testimony." It seems to me that the use of this type of statement was the paradigmatic violation the Supreme Court emphasized in Crawford. As the Court discussed in its historical analysis, the judges at a treason trial against Sir Walter Raleigh permitted the prosecution to read to a jury an affidavit or letter from an alleged co-conspirator, Cobham, in "[t]he most notorious

- 10 -

instance of civil-law examination" in a criminal trial. 541 U.S. at 44. This was an abuse the

Confrontation Clause was enacted to end.

> The Raleigh trial itself involved the very sorts of reliability determinations that Roberts authorizes. In the face of Raleigh's repeated demands for confrontation, the prosecution responded with many of the arguments a court applying Roberts might invoke today: that Cobham's statements were self-inculpatory, that they were not made in the heat of passion, and that they were not "extracted from [him] upon any hopes or promise of Pardon." It is not plausible that the Framers' only objection to the trial was that Raleigh's judges did not properly weigh these factors before sentencing him to death. Rather, the problem was that the judges refused to allow Raleigh to confront Cobham in court, where he could cross-examine him and try to expose his accusation as a lie.

Id. at 62 (citations omitted). The Supreme Court observed that despite Raleigh's freedom to

confront in court those who read Cobham's letter, this was an insufficient protection of a right to

confrontation because "[l]eaving the regulation of out-of-court statements to the law of evidence

would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial

practices." Id. at 51. In other words, to protect the right of confrontation, Cobham's letter would

be inadmissible under the Sixth Amendment because the Confrontation Clause "reflects a

judgment, not only about the desirability of reliable evidence (a point on which there could be

little dissent), but about how reliability can best be determined." Id. at 61.

The Commonwealth suggests that the certificate is not "testimonial" because Crawford

limits the definition of "testimonial" statements to "(1) 'prior testimony at preliminary hearings,

before a grand jury, or at a former trial,' and (2) statements garnered from witnesses during

'police interrogations.'" Crawford, however, expressly includes other formulations of

"testimonial" statements, such as "extrajudicial statements . . . contained in formalized

testimonial materials, such as affidavits, depositions, prior testimony, or confessions, . . . [and]

statements that were made under circumstances which would lead an objective witness

reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at

51-52 (citations omitted). As the Court noted, "[t]hese formulations all share a common nucleus" because they are statements reasonably expected to be used at trial. See id. at 52. The Court did not just focus on the "form" of the evil but, rather, upon the substance: depriving a defendant of the opportunity to meaningfully confront the state's evidence.

The certificate of analysis does not evade the definition of hearsay by reporting statements generated by a machine. It clearly comprises information supplied by a person and an attestation by a person of facts. Indeed, even a cursory review of the seven facts the operator certifies demonstrates they are not mere statements generated by a machine. For example, the operator attests "that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test."

Assertions that the breath test operator was not an "accuser" and that this evidence is somehow "neutral" presupposes that cross-examination of the blood test operator could not serve any valid purpose, when, in fact, there were a number of effective means to cross-examine the operator concerning each of the attestations in the certificate. The certificate proclaimed that the equipment, the record it generated, the breath test, and the operator of the equipment all yielded a result that conformed to statutory requirements and that incriminated Luginbyhl. Without cross-examination, the certificate had the effect of reinforcing the Commonwealth's theory of prosecution. The "crucible of cross-examination" could have exposed any weaknesses in the operator's qualifications, his perception, the state of the equipment, or the test protocol.

The Commonwealth's characterizations of the operator's statements as "neutral" and "non-accusatory" also suggest a type of safeguard that is intended to render the statements more reliable or trustworthy as evidence. Nothing in Crawford declares that the hearsay statement must accuse Luginbyhl of wrongdoing to be testimonial or that statements which appear neutral

in character are nontestimonial.  Indeed, nothing within the meaning of "testimonial" equates with "accusatory."  Furthermore, it is a dubious conclusion that evidence created for use by the prosecutor at trial could ever be "neutral" in the context of the adversarial system in a criminal proceeding.  "The Framers would be astounded to learn that *ex parte* testimony could be admitted against a criminal defendant because it was elicited by 'neutral' government officers."  Crawford, 541 U.S. at 66.

Giving a trial judge the discretion to determine whether a statement is "accusatory" or "neutral" smacks of the "open ended balancing" reliability analysis the Court rejected in Crawford:  "The Roberts test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability . . . [and] replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one."  Id. at 62.  The Supreme Court warned that these were the very kinds of "vague" and "manipulable" standards the Framers "were loath to leave . . . in judicial hands."  Id. at 67.  Thus, the Court rejected the general concept of "replacing categorical constitutional guarantees with open-ended balancing tests" and held that those tests "do violence to [the Framers'] design."  Id. at 67-68.  According to the Supreme Court, the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner:  by testing in the crucible of cross-examination."  Id. at 61.  Thus, the Supreme Court explicitly and "once again reject[ed] the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon 'the law of Evidence for the time being.'"  Id. at 50-51 (citation omitted).  These rulings perforce reject injecting a manipulable evidentiary standard to avoid the constitutional command of Crawford under the guise of characterizing the evidence as "neutral" or "not accusatory."

- 13 -

Simply put, "[a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." Id. at 61. Whether the evidence is accusatory or neutral, it does "bear testimony." Id. at 51. It was prepared for use at trial by a government agent; it was a substitute for an actual witness; it was admitted in evidence without the opportunity of cross-examination. The relevant factors under Crawford are that the evidence in the certificate was generated to discover and report evidence against Luginbyhl, the accused, and was later used at trial for that purpose without the opportunity of cross-examination.

The Commonwealth cites several appellate courts that have ruled affidavits to be nontestimonial. Other appellate courts, however, addressing this precise issue, have ruled that similar affidavits are testimonial and barred by Crawford. See, e.g., Shiver v. State, 900 So. 2d 615, 618 (Fla. App. 2005) (holding that a breath test affidavit "contained statements one would reasonably expect to be used prosecutorially, . . . was made under circumstances which would lead an objective witness to reasonably believe the statements would be available for trial," and was testimonial); City of Las Vegas v. Walsh, 91 P.3d 591, 595 (Nev. 2004) (holding that an affidavit "offered to prove certain facts concerning use of certain devices . . . related to determining presence of alcohol" is one prepared for use at trial and is testimonial); People v. Rogers, 780 N.Y.S.2d 393, 397 (N.Y. App. Div. 2004) (holding that a blood test report "generated by the desire to discover evidence against defendant" was testimonial).

In any event, to decide this case, we need not go beyond the text of Crawford. Plainly understood, the language in Crawford leads to the conclusion that this certificate of analysis is testimonial just as "affidavits . . . the defendant was unable to cross-examine." 541 U.S. at 51. As the Supreme Court noted, "[w]here testimonial statements are involved, we do not . . . leave the Sixth Amendment's protection to the vagaries of the rules of evidence." Id. at 61. In other words, "[d]ispensing with confrontation because testimony is obviously reliable is akin to

dispensing with jury trial because a defendant is obviously guilty.  This is not what the Sixth

Amendment prescribes."  Id. at 62.

## II.

Without addressing the substantive issue on appeal, the majority concludes that any

alleged error in admitting the certificate was harmless.  The majority bases this on Luginbyhl's

statement to the officer that he was "drunk" and an alcoholic and on the officer's observations of

his demeanor and conduct.  I would hold, however, that the record fails to demonstrate that the

trial judge's decision was not affected by the statutory presumption of intoxication triggered by

the certificate of analysis.  See Code § 18.2-269(A)(3).

We succinctly addressed in Williams v. Commonwealth, 32 Va. App. 395, 528 S.E.2d

166 (2000), the contours of the analysis required when a Confrontation Clause error occurs.

> Constitutional error is harmless . . . only if "the beneficiary of the
> constitutional error . . . proves beyond a reasonable doubt that the
> error complained of did not contribute to the verdict obtained."
> Chapman v. California, 386 U.S. 18, 24 (1967).  "The test,
> therefore, is not whether laying aside the erroneously admitted
> evidence there was other evidence sufficient to convict beyond a
> reasonable doubt . . . , but, more stringently, 'whether there is a
> reasonable possibility that the evidence complained of might have
> contributed to the conviction.'"  Thompson v. Leeke, 756 F.2d
> 314, 316 (4th Cir. 1985) (citation omitted).  In other words, even if
> "the other evidence amply supports the . . . verdicts, [error is not
> harmless when] the disputed testimony may well have affected the
> . . . decision."  Cartera v. Commonwealth, 219 Va. 516, 519, 248
> S.E.2d 784, 786 (1978).
>
> An "emphasis and perhaps overemphasis, upon the [concept] of
> 'overwhelming evidence'" has the effect of clouding the relevant
> question "'whether there is a reasonable possibility that the
> evidence complained of might have contributed to the
> conviction.'"  Chapman, 386 U.S. at 23 (footnote and citations
> omitted).  As the Supreme Court has stated, "the correct inquiry is
> whether, assuming that the damaging potential of the [evidence]
> were fully realized, a reviewing court might nonetheless say that
> the error was harmless beyond a reasonable doubt."  [Delaware v.]
> Van Arsdall, 475 U.S. [673,] 684 [(1986)]; see also Olden v.
> Kentucky, 488 U.S. 227, 232 (1988).  Thus, "a harmless error

- 15 -

> analysis . . . [is not] simply a sufficiency of the evidence analysis." Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992).

Williams, 32 Va. App. at 399-400, 528 S.E.2d 168-69 (alterations in original).

When the trial judge admitted the certificate of analysis, its statement that Luginbyhl's blood alcohol level reached .24% triggered the statutory presumption of intoxication. Code § 18.2-269(A)(3) provides that if a chemical analysis of the accused's blood shows that the blood alcohol level was .08% or more, "it shall be presumed that the accused was under the influence of alcohol." It is reasonably possible that the judge attached significant weight to the incriminating evidence in the certificate in spite of strong independent evidence of Luginbyhl's intoxication. See Thomas v. Town of Marion, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983); Castillo v. Commonwealth, 21 Va. App. 482, 487-91, 465 S.E.2d 146, 148-50 (1995).

Indeed, in Thomas, where the trial judge erred in admitting into evidence a certificate of analysis showing the accused had a blood alcohol content of .17% by weight by volume, the evidence proved the accused was unsteady on his feet, "had a strong odor of alcohol about his person, his speech was slurred, and his face was flushed," and, further, the accused "admitted consuming two beers and a shot of whiskey." 226 Va. at 253, 308 S.E.2d at 121. Nonetheless, the Supreme Court ruled that the non-constitutional error was not harmless because it was "probable" the trier of fact "attached great weight to the incriminating information in the certificate." Id. at 254, 308 S.E.2d at 122. This ruling, using the less exacting non-constitutional error standard, see Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001), Lavinder v. Commonwealth, 12 Va. App. 1005, 1005-06, 407 S.E.2d 910, 911 (1991), renders it more than probable in this case that evidence of similar quality was, likewise, not harmless when viewed under the standard required for constitutional error. See Chapman, 386 U.S. at 23 (adopting the standard in Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963), "whether there is a

reasonable possibility that the evidence complained of might have contributed to the conviction"); see also Long v. Commonwealth, 20 Va. App. 223, 227, 456 S.E.2d 138, 140 (1995) (holding that the Commonwealth failed to meet its burden of proving that the error in severing charges for trial did not affect both the verdict and sentence).

Likewise, Jenkins v. Commonwealth, 254 Va. 333, 492 S.E.2d 131 (1997), demonstrates the strictness of the constitutional error standard, which requires the Commonwealth to establish beyond a reasonable doubt that the erroneous admission of the evidence was harmless regarding punishment as well.[4]  In that case, the trial judge allowed a clinical psychologist to testify that based on his ten meetings with a child that "the child 'had been sexually abused.'"  Id. at 336, 492 S.E.2d at 132.  The jury convicted the defendant of aggravated sexual battery, recommending a twenty-year sentence, the maximum under the statute.  Id. at 335, 492 S.E.2d at 132.  Although this Court ruled that the trial judge deprived the defendant of his constitutional right to a jury trial by allowing an expert to testify on the ultimate issue, this Court held the error to be harmless in light of the defendant's confession.  Id.  The Supreme Court disagreed and reversed the conviction.  Id. at 338, 492 S.E.2d at 133.  The Supreme Court held that although

_____

[4] I disagree with the majority's assertion that Rules 5A:18, 5A:12(c), and 5A:20 preclude consideration of whether the alleged error could have affected Luginbyhl's sentence.  See *supra* note 3.  Luginbyhl properly objected when the evidence was offered at trial.  Luginbyhl had no obligation to ask the trial judge to conduct a harmless error review of the judge's own error when the judge admitted the evidence.  See Hackney v. Commonwealth, 28 Va. App. 288, 295-96, 504 S.E.2d 385, 389 (1998) (holding that a trial judge may not consider the possible harm of an error as a basis of an initial decision to admit improper evidence).

The harmless error inquiry is the process by which a reviewing court identifies trial error and then determines whether that error affected the judgment.  See Sochor v. Florida, 504 U.S. 527, 539-40 (1992); Pope v. Illinois, 481 U.S. 497, 504 (1987).  This is so because the purpose of the harmless error rule "is 'to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error.'"  United States v. Hasting, 461 U.S. 499, 509 (1983) (citation omitted).  Furthermore, the principle is well established that the Commonwealth bears the burden of proving the error was harmless.  Chapman, 386 U.S. at 24; see also Joyner v. Commonwealth, 192 Va. 471, 476-78, 65 S.E.2d 555, 558-59 (1951).  Thus, although Luginbyhl is obligated to raise the alleged error on appeal, he is not obligated to raise the harmless error doctrine.

the defendant's admission of a single episode of abuse sufficiently supported a finding of guilt, the expert testimony "was prejudicial for purposes of fixing the quantum of punishment imposed" because the expert testimony alluded to repeated abuse. Id. The Court could not find that the trial judge's error was harmless beyond a reasonable doubt and remanded the case for a new trial. Id. at 338, 492 S.E.2d at 133-34.

Significantly, the psychologist did not directly testify in Jenkins that the abuse was ongoing or otherwise particularly severe. Yet, the possibilities that the trier of fact inferred the severity of the abuse from the inappropriate testimony and that the verdict could have been affected by that inference were enough to keep the error from being harmless. The error in Luginbyhl's case is more harmful than the error in Jenkins because Code § 18.2-269(A)(3) essentially required that the trial judge consider the certificate of analysis as presumptive of guilt. In view of this statutory presumption of guilt, this record in this case does more than merely raise the possibility that the fact finder was swayed by a possible inference drawn from the improperly admitted evidence.

I believe we cannot reasonably conclude from the circumstances of this case that the government has met its burden of proving beyond a reasonable doubt that the error could not have affected the verdict or the sentence. For these reasons, I would hold that the admission of the document violated Luginbyhl's rights as protected by the Confrontation Clause and that a reasonable possibility exists that the error did affect the verdict and the sentence.

# VIRGINIA:

*In the Court of Appeals of Virginia on*  **Tuesday**  *the*  **27th**  *day of*  **September, 2005**.

Alan Luginbyhl, s/k/a
  Alan Kurt Luginbyhl,                                                                    Appellant,

 against            Record No. 1333-04-4
                    Circuit Court No. M 28406

Commonwealth of Virginia,                                                         Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank,
Humphreys, Clements, Felton, Kelsey, McClanahan and Haley


On September 12, 2005 came the appellant, by counsel, and filed a petition praying that the

Court set aside the judgment rendered herein on August 30, 2005, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered

herein on August 30, 2005 is stayed pending the decision of the Court *en banc*, and the appeal is

reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35.  The appellant shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellant shall file with the clerk of this Court twelve

additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


ALAN LUGINBYHL, S/K/A
 ALAN KURT LUGINBYHL
                                                          OPINION BY
v.       Record No. 1333-04-4              JUDGE ROSEMARIE ANNUNZIATA
                                                       AUGUST 30, 2005
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                           David T. Stitt, Judge

          Michael F. Devine (Devine & Connell, P.L.C., on briefs), for
          appellant.

          Stephen R. McCullough, Assistant Attorney General (Jerry W.
          Kilgore, Attorney General; Judith Williams Jagdmann, Attorney
          General, on briefs), for appellee.


        Alan Luginbyhl was charged with and convicted of driving while intoxicated (DWI)

pursuant to Code § 18.2-266.  On appeal, he contends his conviction should be reversed because

the trial court erred in admitting into evidence a certificate of blood alcohol analysis based on the

result obtained from a breath test.  Specifically, he argues that admission of the document

violated his rights under the Confrontation Clause of the Sixth Amendment.  For the reasons that

follow, we disagree and affirm his conviction.

                                   I.  Background

        In accord with our usual standard of review, we view the evidence and all reasonable

inferences flowing from the evidence in a light most favorable to the Commonwealth as the party

prevailing in the trial court.  Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99

(2003). So viewed, the evidence[1] establishes that, on November 23, 2003, Luginbyhl drove his car out of a parking lot and for a few moments remained perpendicular to the lanes of travel, blocking the oncoming traffic. Several cars had to brake abruptly in order to avoid hitting Luginbyhl before he slowly turned his vehicle to the right. He began "weaving" as he continued driving down the road, missing the curb "by approximately two inches." Approaching vehicles had to brake to avoid a collision when Luginbyhl slowly turned left into a shopping center.

Fairfax County Police Officer Darren Day witnessed Luginbyhl's erratic driving and effected a traffic stop. Day detected a strong odor of alcohol emanating from Luginbyhl and noticed that his eyes were glassy and bloodshot, that his face was red, and that he exhibited sluggish motor skills. As Luginbyhl exited his vehicle, he began to fall forward, requiring Day to provide support. Asked how much alcohol he had had to drink, Luginbyhl responded, "I had a lot." He further admitted consuming "6, 7 or 8 vodka drinks."

Luginbyhl was unable to successfully perform two field sobriety tests: the "finger-to-nose test" and the "one-legged stand test." In the course of trying to complete the latter, Luginbyhl began to cry and stated, "I'm drunk; I'm an alcoholic." Day thus placed Luginbyhl under arrest and took him to a police substation where a breath test was conducted.

Although Day was present and observed Luginbyhl take the breath test, he did not administer it. Day explained that his license to operate the breath test machine expired a year earlier.

The trial judge admitted the breath test certificate over Luginbyhl's Sixth Amendment objections. The breath test certificate indicates that Officer Edward A. Caine administered the test and that Luginbyhl's blood alcohol content was 0.24 grams per 210 liters of breath. The certificate also contains the following preprinted attestation:

---

[1] In lieu of a transcript, the parties submitted an agreed Statement of Facts pursuant to Rule 5A:8.

> I CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF THE TEST CONDUCTED; THAT THE TEST WAS CONDUCTED WITH THE TYPE OF EQUIPMENT AND IN ACCORDANCE WITH THE METHODS APPROVED BY THE DEPARTMENT OF CRIMINAL JUSTICE SERVICES, DIVISION OF FORENSIC SCIENCE; THAT THE TEST WAS CONDUCTED IN ACCORDANCE WITH THE DIVISION'S SPECIFICATIONS; THAT THE EQUIPMENT ON WHICH THE BREATH TEST WAS CONDUCTED HAS BEEN TESTED WITHIN THE PAST SIX MONTHS AND FOUND TO BE ACCURATE; THAT PRIOR TO ADMINISTRATION OF THE TEST THE ACCUSED WAS ADVISED OF HIS RIGHT TO OBSERVE THE PROCESS AND SEE THE BLOOD ALCOHOL READING ON THE EQUIPMENT USED TO PERFORM THE BREATH TEST, AND THAT I POSSESS A VALID LICENSE TO CONDUCT SUCH TEST, GIVEN UNDER MY HAND THIS _25TH_ DAY OF _NOVEMBER_, 20_03_.

Officer Caine signed in the space below the attestation under the words "BREATH TEST OPERATOR." Officer Caine did not testify at Luginbyhl's trial.

Based on the breath test evidence and the testimony of Officer Day, the trial judge found Luginbyhl guilty of DWI and sentenced him to 180 days in jail, 170 of which were suspended on condition of good behavior.

Citing Crawford v. Washington, 541 U.S. 36 (2004), Luginbyhl argues on appeal that the contents of the breath test certificate constitute "testimonial hearsay" and that the trial court violated his Sixth Amendment right to confront the witnesses against him by admitting the certificate without the testimony of Officer Caine. We interpret his appeal to encompass both components of the breath test certificate: (1) the result of the breath test showing his BAC to be 0.24 and (2) the attestation certifying that the equipment was in good working order and that

Officer Caine was licensed to perform the breath test.[2]  His appeal raises an issue of first

impression in Virginia.[3]

We do not agree that the trial court erred in admitting either component of the breath test

certificate.  We hold that the result of the breath test does not constitute hearsay and therefore

does not implicate Luginbyhl's Sixth Amendment rights.  We further hold that the statements

contained in the certificate attesting to the equipment's good working order and Officer Caine's

valid license to operate the machine do not constitute "testimonial" hearsay and are therefore not

subject to the rule in Crawford.

II.  The Result of the Breath Test Does Not Constitute Hearsay
and its Admission into Evidence Does Not Implicate
Luginbyhl's Sixth Amendment Right to Confrontation

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all

criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the *witnesses*

against him."  U.S. Const. amend. VI (emphasis added).  By its very terms, the constitutional

guarantee applies only to *witnesses* against the accused.  The guarantee operates by preventing

the admission of witness testimony through hearsay evidence at trial unless the prosecution

shows that the hearsay declarant (witness) is unavailable and that the accused had a prior

---

[2] Luginbyhl does not argue on appeal that the Commonwealth failed to sufficiently authenticate the breath test certificate or that it failed to lay a proper foundation for its admission pursuant to Code § 18.2-268.9.

[3] The United States Supreme Court's decision in Crawford has generated much debate and discussion as to its application to and effect on admitting various types of evidence.  See generally Major Robert W. Best, To Be or Not to Be Testimonial?  That is the Question, 2005 Army Law. 65 (April 2005); W. Jeremy Counseller, The Confrontation Clause After *Crawford v. Washington*:  Smaller Mouth, Bigger Teeth, 57 Baylor L. Rev. 1 (Winter 2005); Chris Hutton, Sir Walter Raleigh Revived:  The Supreme Court Re-Vamps Two Decades of Confrontation Clause Precedent in *Crawford v. Washington*, 50 S.D. L. Rev. 41 (2005); John F. Yetter, Wrestling with *Crawford v. Washington* and the New Constitutional Law of Confrontation, Florida Bar J. (October 2004).

- 4 -

opportunity to cross-examine the hearsay declarant. Crawford, 541 U.S. at 53-54, 59. The guarantee does not apply to evidence that is not hearsay. Id. at 61.

Virginia has described hearsay evidence as

> "evidence which derives its value, not solely from the credit to be given the witness on the stand, but in part from the veracity and competency of some other person. It is primarily testimony which consists in a narration by one person of matters told him by another. A clear example of hearsay evidence is where a witness testifies to the declaration of another for the purpose of proving the facts asserted by the declarant."

Wright v. Kaye, 267 Va. 510, 530, 593 S.E.2d 307, 318 (2004) (quoting Williams v. Morris, 200 Va. 413, 416-17, 105 S.E.2d 829, 832 (1958)). See Clark v. Commonwealth, 14 Va. App. 1068, 1070, 421 S.E.2d 28, 30 (1992) (defining hearsay as "a statement, other than one made by the *declarant* while testifying at trial, which is offered to prove the truth of the matter asserted" (emphasis added) (citing Arnold v. Commonwealth, 4 Va. App. 275, 279-80, 356 S.E.2d 847, 850 (1987))); see also Bowman v. Commonwealth, 28 Va. App. 204, 209, 503 S.E.2d 241, 243 (1998) ("Hearsay is 'testimony given by a *witness* who relates not what he knows personally, but what others have told him or what he has heard said by others.'" (emphasis added) (quoting Cross v. Commonwealth, 195 Va. 62, 74, 77 S.E.2d 447, 453 (1953))). See generally Evans-Smith v. Commonwealth, 5 Va. App. 188, 197, 361 S.E.2d 436, 441 (1987) (explaining that the "strongest justification for the exclusion of hearsay evidence is that the trier of fact has no opportunity to view the witness on cross-examination and to observe the demeanor of the out-of-court declarant to determine reliability" (citing Charles A. Friend, The Law of Evidence in Virginia § 224 (2d ed. 1983))).

Evidence that is not a statement from a human witness or declarant is not hearsay. See Tatum v. Commonwealth, 17 Va. App. 585, 588, 440 S.E.2d 133, 135 (1994) (holding that evidence of numbers displayed on a caller ID system is not hearsay because "there is no

- 5 -

'out-of-court asserter'" and "because the caller ID display is based on computer generated information and not simply the repetition of prior recorded human input or observation"); Penny v. Commonwealth, 6 Va. App. 494, 498, 370 S.E.2d 314, 317 (1988) (holding that evidence obtained from a "call trap" device is not hearsay because "the call trap's reliability does not depend on an out-of-court declarant's veracity or perceptive abilities, and no cross-examination could occur which would enhance the truth-finding process"); see also Oregon v. Weber, 19 P.3d 378, 381 (Or. Ct. App. 2001) (notation of speed on radar photograph "was generated by a machine, and not made by a person," therefore, it "is an assertion not made by a person" and is not hearsay).

The breath test result at issue in this case is not derived from a human declarant or asserter. Rather, the breath test result is generated by a machine and does not depend on the administering police officer's "veracity or perceptive abilities." See Tatum, 17 Va. App. at 588, 440 S.E.2d at 135; Penny, 6 Va. App. at 498, 370 S.E.2d at 317.

Therefore, the breath test result does not constitute hearsay. That determination is supported by case law from other jurisdictions. In Stevenson v. State, 920 S.W.2d 342 (Tex. Crim. App. 1996) (*en banc*), the Texas Court of Appeals held:

> The intoxilyzer instrument, in itself, cannot be a declarant.
> Because the intoxilyzer is not a declarant, the data it generates is
> not a statement and cannot be hearsay. The fact that the same data
> is ultimately printed in hard copy does not convert it into hearsay.

Id. at 343-44 (citations omitted); Caldwell v. State, 495 S.E.2d 308, 310 (Ga. Ct. App. 1997) (stating that breath test machine "printouts are not hearsay but rather the mechanically-generated reports automatically created by the machine[, and, t]hey do not constitute out-of-court statements by any person or 'the conclusion of a third party not before the court.'" (internal citations omitted)); State v. Van Sickle, 813 P.2d 910, 913 (Idaho Ct. App. 1991) (holding that "printout from the Intoximeter is not a 'statement' for hearsay purposes," because the printout,

- 6 -

"although a writing offered to prove the truth of the matter asserted therein, is not extrajudicial testimony prohibited by the hearsay rule; the printout is a test result produced by a machine"); Smith v. State, 323 S.E.2d 316, 318, 323 (N.C. 1984) (holding that statutory procedures allowing admission of affidavit by chemical analyst was "constitutionally permissible procedure attuned to scientific and technological advancements which have insured reliability in chemical testing for blood alcohol concentration," and such "procedure does not violate the accused's right to confrontation"; observing that "breathalyzer procedure now available for objectively determining blood alcohol concentration lends itself to the somewhat startling conclusion that 'in reality the witness against the defendant, the source of the crucial and incriminating evidence, is not the analyst, but the machine itself'"); see also Friend, The Law of Evidence in Virginia § 18-5 (6th ed. 2003).

Because the breath test result is not hearsay, Luginbyhl's Sixth Amendment right to confrontation is not implicated. See generally Crawford, 541 U.S. at 51-53 (explaining that the test of the Sixth Amendment and the history underlying common-law right of confrontation reflects an "acute concern with a specific type of out-of-court statement," listing examples of the "core class of 'testimonial' statements" and specifying "testimonial hearsay"); see also United States v. Restrepo, 994 F.2d 173, 183 (5th Cir. 1993); United States v. Herndon, 536 F.2d 1027, 1029 (5th Cir. 1976); Johnson v. State, 715 S.W.2d 441, 443 (Ark. 1986); Van Sickle, 813 P.2d at 913; Evans v. State, 499 So. 2d 781, 783 (Miss. 1986); State v. Williams, 913 S.W.2d 462, 465 (Tenn. 1996). Therefore, Luginbyhl's Sixth Amendment challenge to the trial court's admission of the breath test result into evidence fails.

### III. The Statements in the Breath Test Certificate Attesting to the Machine's Good Working Order and the Officer's Valid License to Operate the Machine Do Not Constitute "Testimonial" Hearsay under Crawford

Unlike the breath test result, Officer Caine's statements on the breath test certificate constitute hearsay because they are assertions made by an out-of-court human declarant and were offered to prove the truth of the matters asserted, namely, that the breath test device worked properly and that Officer Caine was licensed to operate it. See Code § 18.2-268.9 (providing, in pertinent part, that a certificate of breath analysis "shall be admissible as evidence of the facts therein stated and of the results of such analysis" provided the "individual" conducting the breath test attests, *inter alia*, "that the test was conducted in accordance with the Division's specifications, the equipment on which the breath test was conducted has been tested within the past six months and has been found to be accurate"); Clark, 14 Va. App. at 1070, 421 S.E.2d at 30 (defining hearsay as "a statement, other than one made by the declarant while testifying at trial, which is offered to prove the truth of the matter asserted"); see also Anderson v. Commonwealth, 25 Va. App. 26, 33, 486 S.E.2d 115, 118 (1997) (Benton, J., concurring in part, dissenting in part) (referring to Code § 18.2-268.9 "as an exception to the rule against hearsay").

Because Officer Caine's statements constitute hearsay and because he did not testify at trial, Luginbyhl did not have the opportunity to cross-examine him to test the veracity of his statements. Luginbyhl's inability to "confront" a hearsay declarant raises a valid Sixth Amendment concern that we must address. See generally Crawford, 541 U.S. at 51-60, 69 (recognizing and analyzing testimonial and nontestimonial hearsay). We conclude, however, that the admission of the statements into evidence did not violate Luginbyhl's Sixth Amendment right to confrontation because the statements are not "testimonial" in nature. A review of the law prior to the Supreme Court's decision in Crawford and of the historical analysis undertaken by

the Court in <u>Crawford</u> is necessary to understand the significance and reasoning of our determination that the statements are not testimonial in nature.

In 1980, the Supreme Court held in <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), that the Sixth Amendment right to confrontation limits the state's ability to use hearsay testimony against a criminal defendant. The Court announced the following rule in <u>Roberts</u>:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

<u>Id.</u> at 66. Courts have employed the rule in <u>Roberts</u> for almost twenty-five years.

Recently, however, the Supreme Court overruled <u>Roberts</u>. After conducting an extensive historical analysis of the Confrontation Clause in <u>Crawford</u>, the Supreme Court determined that the rule in <u>Roberts</u> is overly broad and flawed. The Court stated that, although the <u>Roberts</u> reliability test advances the goal of the Confrontation Clause to ensure the reliability and trustworthiness of out-of-court statements, the clause secures a procedural, rather than a substantive, right. <u>Crawford</u>, 541 U.S. at 61. Thus, the Court held that the Confrontation Clause demands "not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." <u>Id.</u>

In determining what sort of evidence the Sixth Amendment subjects to the "crucible of cross-examination," the Supreme Court stated that the text of the amendment makes clear that it "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" <u>Id.</u> at 51 (quoting 1 N. Webster, <u>An American Dictionary of the English Language</u> (1828)). The critical question in the instant case, therefore, is whether the statements in the breath test certificate qualify as testimonial.

The Supreme Court's discussion in Crawford of the historical underpinnings of the

Confrontation Clause and the abuses it was designed to prevent shed light on whether the

statements in the breath test certificate are testimonial evidence. The Supreme Court noted that

> [t]he founding generation's immediate source of the concept [of
> confrontation] . . . was the common law. English common law has
> long differed from continental civil law in regard to the manner in
> which witnesses give testimony in criminal trials. The
> common-law tradition is one of live testimony in court subject to
> adversarial testing, while the civil law condones examination in
> private by judicial officers.

Id. at 43.

Despite the common-law tradition of requiring live testimony at criminal trials, "England

at times adopted elements of the civil-law practice." Id. In order to employ these civil law

practices and digress from the common law, the crown passed the Marian bail and committal

statutes, which "required justices of the peace to examine suspects and witnesses in felony cases

and to certify the results to the court." Id. at 44. That practice was employed in the political

trials of the sixteenth and seventeenth centuries, resulting in "[t]he most notorious instances of

civil-law examination." Id. One of the most notable trials was the treason trial of Sir Walter

Raleigh, in which incriminating testimony given by Lord Cobham during an examination before

the Privy Council was allowed to be read into evidence. Id. at 44-45.

Over time, England's lapses into the civil-law practice of allowing testimony derived

from out-of-court examinations in criminal trials came to be seen as abuses. See id. at 44 (noting

that "[o]ne of Raleigh's trial judges later lamented that 'the justice of England has never been so

degraded and injured as by the condemnation of Sir Walter Raleigh'" (citing 1 D. Jardine,

Criminal Trials 520 (1832))). Thus, "[t]hrough a series of statutory and judicial reforms"

enacted in the seventeenth and eighteenth centuries, "English law developed a right of

confrontation that limited these abuses," id. at 44, such that "by 1791 (the year the Sixth

Amendment was ratified) courts were applying the cross-examination rule even to examinations by justices of the peace in felony cases," id. at 46.

Notwithstanding the common law's adoption of the right to confrontation, the failure of the United States Constitution as ratified in 1789 to guarantee a right to confrontation troubled anti-federalists who feared that, without such a guarantee, the civil-law practice of allowing accusatory out-of-court testimony could become the norm in criminal prosecutions. See id. at 49. "The First Congress responded [to these fears] by including the Confrontation Clause in the proposal that became the Sixth Amendment." Id.

Against this historical backdrop, the true meaning of the Sixth Amendment's Confrontation Clause comes into focus.

> [T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused. It was these practices that the Crown deployed in notorious treason cases like Raleigh's; that the Marian statutes invited; that English law's assertion of a right to confrontation was meant to prohibit; and that the founding-era rhetoric decried. The Sixth Amendment must be interpreted with this focus in mind.

Id. at 50.

Thus, the "testimonial" evidence to which the Sixth Amendment applies must be interpreted in light of the primary evil at which the amendment is directed. Although the Supreme Court expressly left "for another day any effort to spell out a comprehensive definition of 'testimonial,'" id. at 68, and noted that other "formulations of this core class of 'testimonial' statements exist," id. at 51,[4] it expressly adopted the following two examples of evidence it

---

[4] Citing the parties' briefs and a concurring opinion in White v. Illinois, 502 U.S. 346, 365 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment), written by Justice Thomas, the Court delineated the following formulations: (1) "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial

considers to be testimonial: (1) "prior testimony at a preliminary hearing, before a grand jury, or at a former trial," and (2) statements garnered from witnesses during "police interrogations." Id. These instances are testimonial in nature, the Supreme Court reasoned, because they bear the most resemblance "to the abuses at which the Confrontation Clause was directed." Id. at 68. Where testimonial hearsay statements are at issue, the Supreme Court held that the Sixth Amendment bars their introduction into evidence unless the prosecution shows that the hearsay declarant is unavailable and that the accused had a prior opportunity to cross-examine the hearsay declarant. Id.

Here, it is not disputed that the Commonwealth failed to show that Officer Caine was unavailable or that Luginbyhl had no prior opportunity to cross-examine him. However, applying the reasoning of the Supreme Court in Crawford, we conclude that the Commonwealth did not have to show unavailability and a prior opportunity for cross-examination because the statements contained in the breath test certificate are not "testimonial." Two rationales support our conclusion.

First, Officer Caine's statements in the affidavit do not resemble the types of statements identified by the Supreme Court as testimonial. They are not "prior testimony at a preliminary hearing, before a grand jury, or at a former trial" and are not statements obtained from a witness during a "police interrogation." See id. at 52.

Second, the statements bear little or no resemblance to the evils at which the Confrontation Clause was directed. Id. at 51 (noting that "not all hearsay implicates the Sixth

statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51-52 (citations omitted). Because the Supreme Court did not expressly adopt any of these formulations or use them in its analysis, we decline to rely on them here. See People v. Taulton, 2005 Cal. App. LEXIS 877, *7 (Cal. Ct. App. 2005) (noting that "nothing in Crawford compels the conclusion that, by quoting a statement from a brief, the court intended to adopt its language as the test for determining whether a statement is 'testimonial'").

Amendment's core concerns").  Namely, the statements do not accuse Luginbyhl of any wrongdoing, the common thread among the hearsay identified by the Court as the primary concern of the Sixth Amendment.  See id. at 43 (Historically, "[t]he right to confront one's *accusers* is a concept that dates back to Roman times."), and at 51 (principal evil at which the Clause was directed was use of *ex parte* examinations as evidence against the accused); see also U.S. Const. amends. VI and XIV ("[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him"); Va. Const. art. 1, § 8 ("in criminal prosecutions a man hath a right . . . to be confronted with the accusers and witnesses"); Napier v. State, 827 N.E.2d 565, 569 (Ind. Ct. App. 2005) (*en banc*) (finding that breath test instrument certification and operator certification documents "bear[] no similarity to the type of evidence that the Supreme Court labeled as testimonial" in Crawford and do not fall within the rule announced in that case; noting that "an operator's certification does not have a bearing on the issue of guilt or innocence"); State v. Carter, 2005 MT 87, P38, 2005 Mont. LEXIS 153, 21-22 (Mont. Apr. 5, 2005) (finding certification reports are nontestimonial hearsay under Crawford and not substantive evidence of a particular offense, but rather foundational evidence for admission of substantive evidence); State v. Cook, 2005 Ohio App. LEXIS 1514 (Mar. 31, 2005) ** 8-9 (certification records "bear no similarities to the types of evidence the Supreme Court labeled as testimonial" in Crawford); accord Brown v. State, 485 S.E.2d 486, 488-89 (Ga. 1997) (finding breath testing device certificates, like radar device certificates, merely a memorandum of the equipment's accuracy "as opposed to the opinionative quality of the testing performed"; also explaining, "although these certificates are used in litigation, that is not their sole purpose or function" and they "are not made in response to litigation against any one particular individual"); Jackson v. State, 504 S.E.2d 505, 508 (Ga. Ct. App. 1998) (admission of certificate of inspection of breath test machine did not violate Confrontation Clause because "the declarant is not a

witness 'against' a criminal defendant within traditional constitutional analysis"). Rather, the statements are neutral in character, relating only to the operation of the machine and the qualifications of the officer administering the test. The contrast between these statements and the statements of Lord Cobham admitted at Raleigh's trial could not be more patent. See Crawford, 541 U.S. at 44. Thus, we conclude that the statements contained in the breath test certificate relating to the machine's good working order and the qualifications of the administering officer do not "bear testimony" against the accused within the meaning of the Sixth Amendment.

Guided by the Supreme Court's decision in Crawford and the historical context in which it was rooted, as well as the reasoning of appellate courts in other states, we hold that the statements in the breath test certificate relating to the machine's good working order and the administering officer's qualifications are not testimonial statements. Because the statements are not testimonial, the Commonwealth did not have to make the foundational showing that Officer Caine was unavailable and that Luginbyhl had a prior opportunity to cross-examine him.

V. The Statements in the Breath Test Certificate
Were Properly Admitted Pursuant to Code § 18.2-268.9

Although the statements in the breath test certificate are not testimonial, we still must answer whether, as nontestimonial hearsay, their admission violated Luginbyhl's Sixth Amendment right to confrontation. We believe that the Court in Crawford provided a definitive answer to that question.

The Supreme Court concluded its opinion in Crawford by stating the following: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does Roberts, and as would an approach *that exempted such [nontestimonial] statements from Confrontation Clause scrutiny altogether*." Id. at 68 (emphasis added). The Court's conclusion that the Constitution affords

- 14 -

states flexibility in their treatment of nontestimonial hearsay is consistent with its earlier determination that the Sixth Amendment's primary concern is testimonial hearsay. See id. at 50-52.

In Virginia, the legislature has determined that breath test certificates, and the information they contain, are admissible in court against the accused. Code § 18.2-268.9 provides, in part:

> Any individual conducting a breath test under the provisions of § 18.2-268.2 shall issue a certificate which will indicate that the test was conducted in accordance with the Division's specifications, the equipment on which the breath test was conducted has been tested within the past six months and has been found to be accurate, the name of the accused, that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, the date and time the sample was taken from the accused, the sample's alcohol content, and the name of the person who examined the sample. This certificate, when attested by the individual conducting the breath test, *shall be admissible in any court in any criminal or civil proceeding as evidence of the facts therein stated and of the results of such analysis.*

(Emphasis added.) The legislature's determination that the statements in the breath test are admissible notwithstanding the fact that they are hearsay is wholly consistent with the "flexibility"[5] afforded it by the Constitution and the Supreme Court's decision in Crawford.[6] See

---

[5] According to Crawford, the legislature could "exempt such statements from Confrontation Clause scrutiny altogether," Crawford, 541 U.S. at 68, an action we believe the Virginia legislature has taken with the adoption of Code § 18.2-268.9.

[6] We are aware that other courts have found that Crawford leaves the continuing viability of Roberts with respect to nontestimonial hearsay in doubt. The Court of Appeals of South Carolina summed up this view:

> "Justice Scalia's opinion [in Crawford] hints, but does not decide, that the Confrontation Clause no longer applies to non-testimonial hearsay, and that its admission is governed by a jurisdiction's hearsay rules" and Roberts' "indicia of reliability" approach. David F. Binder, Hearsay Handbook § 7:2 (4th ed. 2004). Most

- 15 -

People v. Roldan, 110 P.3d 289, 332 n.25 (Cal.) (noting that, "[w]here an offered statement is

nontestimonial, states may regulate the admission of evidence by applying their hearsay rules

without running afoul of the confrontation clause"), reh'g denied, 2005 Cal. LEXIS 6514 (June

8, 2005). We therefore conclude that Luginbyhl's constitutional rights were not infringed by the

admission of the nontestimonial statements contained in the breath test certificate.

---

jurisdictions are leaning toward the idea that "Crawford [left] the Roberts approach untouched with respect to nontestimonial statements." United States v. Saget, 377 F.3d 223, 227 (2d Cir. 2004); see also Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004) ("Thus, unless [witness's hearsay] statements qualify as 'testimonial,' Crawford is inapplicable and Roberts continues to apply.") [, cert. denied, 125 S. Ct. 971 (2005)]; State v. Manuel, 275 Wis. 2d 146, 2004 WI App 111, 685 N.W.2d 525, 533 (Wis. Ct. App. 2004), review granted, 2004 WI 138, 276 Wis. 2d 26, 689 N.W.2d 55 (Wis. 2004) ("We proceed, in an abundance of caution, to analyze Manuel's confrontation clause claim under the Roberts analysis").

State v. Staten, 610 S.E.2d 823, 836 (S.C. Ct. App. 2005) (alterations in original).

Although we fail to see such ambiguity in light of the Supreme Court's determination that the Constitution allows states to admit nontestimonial hearsay in court and, indeed, exempt it from scrutiny altogether, Crawford, 541 U.S. at 68, we nonetheless conclude that the statements contained in the breath test certificate would pass muster under Roberts.

Roberts requires a showing that the hearsay declarant is unavailable and that the hearsay statement falls within a firmly rooted exception to the hearsay rule or otherwise contains particularized guarantees of trustworthiness. The showing of unavailability need only be made "'when the challenged out-of-court statements were made in the course of a prior judicial proceeding.'" Parker v. Commonwealth, 41 Va. App. 643, 651, 587 S.E.2d 749, 753 (2003) (quoting White, 502 U.S. at 354).

The statements at issue in the instant case pass the Roberts test for two reasons. First, although the Commonwealth made no showing that Officer Caine was unavailable, it was not required to do so because the statements were not made in the course of a prior judicial proceeding. Second, the statements contained in the breath test certificate—that the machine is in good working order and that the officer is licensed and qualified to administer the test—are particularly trustworthy. The statements are particularly trustworthy because, pursuant to exhaustive administrative regulations found at 6 VAC 20-190-110, *et seq.*, the breath test machine is frequently tested and is operated only by those who obtain a license to conduct the test after extensive training and testing.

- 16 -

## VI.  Conclusion

We hold that the result of Luginbyhl's breath test contained in the certificate of analysis is not hearsay evidence and, therefore, that its admission into evidence does not implicate his Sixth Amendment right to confrontation.  We further hold that statements contained in the breath test certificate relating to the machine's good working order and the administering officer's qualifications do not constitute testimonial hearsay and do not require the Commonwealth to prove, pursuant to Crawford, that Officer Caine was unavailable and that Luginbyhl had a prior opportunity to examine him.  Accordingly, the trial court did not err in admitting the breath test certificate.[7]  Luginbyhl's conviction is therefore affirmed.

Affirmed.

---

[7] Because we conclude that the trial court did not err in admitting the breath test certificate, we need not address the Commonwealth's "harmless error" argument.

Benton, J., dissenting.

This appeal challenges the admissibility of a certificate of breath analysis containing the attestation of a government employee who did not testify at trial. I would hold that the decision in Crawford v. Washington, 541 U.S. 36 (2004), bars its admission.

The certificate of blood analysis, which was admitted in evidence over a hearsay objection, is signed by a "breath test operator" under the following attestation:

> I certify that the above is an accurate record of the test conducted; that the test was conducted with the type of equipment and in accordance with the methods approved by the Department of Criminal Justice Services, Division of Forensic Science; that the test was conducted in accordance with the Division's specifications; that the equipment on which the breath test was conducted has been tested within the past six months and found to be accurate; that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, and that I possess a valid license to conduct such test, given under my hand this 25th day of November, 2003.

The majority agrees that the operator's attestation "statements . . . constitute hearsay" and that Alan "Luginbyhl did not have the opportunity to cross-examine [the operator] to test the veracity of his statements . . . [, raising] a valid Sixth Amendment concern." Yet, the majority conducts its own historical analysis and concludes the statement is not testimonial. I disagree because Crawford answers that relevant question.

Examining the historical background of the Sixth Amendment's Confrontation Clause, the Supreme Court in Crawford held that "history supports two inferences about the meaning of the Sixth Amendment." 541 U.S. at 50.

> First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused. . . . The Sixth Amendment must be interpreted with this focus in mind.

- 18 -

\*     \*     \*     \*     \*     \*     \*

       The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.

Id. at 50, 53-54. In view of this historical analysis, the Supreme Court overruled the reliability test set forth in Ohio v. Roberts, 448 U.S. 56 (1980), because of "its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." Crawford, 541 U.S. at 63.

In plain terms, Crawford describes a "core class of 'testimonial statements'" as including "affidavits," any "similar pretrial statements that declarants would reasonably expect to be used prosecutorially," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51-52. Simply put, the certificate of blood analysis that was admitted in evidence in this case is testimonial under the narrowest of the Crawford definitions and, thus, falls squarely within the Crawford bar. As Alan Luginbyhl contends, the "certificate . . . was a formalized, *ex parte* statement made by a government agent for the sole purpose of being used prosecutorially in court in lieu of his live testimony."

It cannot be fairly disputed that the breath analysis and attestation of the operator were conducted solely to provide evidence in court to prove the facts necessary to convict Luginbyhl. Indeed, the attestation statement asserts the existence of seven facts or circumstances said to be true by the "breath test operator." Despite those assertions of facts, the employee of the police department who signed the attestation as the operator was not subject to cross-examination as to any of those circumstances. As the Crawford Court noted, the "[i]nvolvement of government

officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse -- a fact borne out time and again throughout a history with which the Framers were keenly familiar."  541 U.S. at 56 n.7.

The majority concludes too summarily, I believe, that the attestation "statements bear little or no resemblance to the evils at which the Confrontation Clause was directed."  It seems to me that the use of this type of statement was the paradigmatic violation the Supreme Court emphasized in Crawford.  As the Court indicated in its historical analysis, an affidavit or letter from an alleged co-conspirator, Cobham, was read at a treason trial against Sir Walter Raleigh in "[t]he most notorious instance of civil-law examination" in a criminal trial.  541 U.S. at 44.

> The Raleigh trial itself involved the very sorts of reliability determinations that Roberts authorizes.  In the face of Raleigh's repeated demands for confrontation, the prosecution responded with many of the arguments a court applying Roberts might invoke today:  that Cobham's statements were self-inculpatory, that they were not made in the heat of passion, and that they were not "extracted from [him] upon any hopes or promise of Pardon."  It is not plausible that the Framers' only objection to the trial was that Raleigh's judges did not properly weigh these factors before sentencing him to death.  Rather, the problem was that the judges refused to allow Raleigh to confront Cobham in court, where he would cross-examine him and try to expose his accusation as a lie.

Id. at 62 (citations omitted).  Noting that Raleigh was free to confront in court those who read Cobham's letter, the Supreme Court observed, however, that this was an insufficient protection of a right to confrontation because "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices."  Id. at 51.  In other words, to protect the right of confrontation, Cobham's letter would be inadmissible under the Sixth Amendment because the Confrontation Clause "reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined."  Id. at 61.

Thus, I disagree with the majority's conclusion that Crawford limits the definition of "testimonial" statements to "(1) 'prior testimony at preliminary hearings, before a grand jury, or at a former trial,' and (2) statements garnered from witnesses during 'police interrogations.'" The majority ignores other formulations of "testimonial" statements that Crawford expressly includes, such as "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, . . . [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51-52. To say that testimonial evidence must meet the narrow definition the majority ascribes to it is to focus on the "form" of the evil, and not the substance, the lack of meaningful confrontation to counter the state's evidence. The majority's conclusion ignores the Supreme Court's premise: "These formulations all share a common nucleus," -- they are statements reasonably expected to be used at trial. Id. at 52. As such, the Confrontation Clause gives a criminal defendant an absolute right of confrontation to meet this testimonial hearsay evidence.

Even a cursory review of the seven facts the operator certifies demonstrates they are not mere statements generated by a machine, as the majority suggests. For example, the operator attests "that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test." The majority's assertion that this evidence is "neutral" does not withstand analysis. It presupposes there was no way to cross-examine the blood test operator, when in fact, there were a number of effective means to cross-examine the operator concerning each of the attestations in the certificate. The certificate proclaimed that the equipment, the record it generated, the breath test, and the operator of the equipment all yielded a result that conformed to statutory requirements and that incriminated Luginbyhl. Without cross-examination, the certificate had

the effect of reinforcing the Commonwealth's theory of prosecution. The "crucible of cross-examination" could have exposed any weaknesses in the subjective state of the operator, his perception, the state of the equipment, or the test protocol.

The majority characterizes the operator's statements as "neutral" and "non-accusatory," suggesting a type of safeguard that is intended to render the statements more reliable or trustworthy as evidence. Nothing in Crawford declares that the hearsay statement must "accuse [the defendant] of any wrongdoing" to be testimonial or that "statements . . . neutral in character" are nontestimonial. Indeed, nothing within the meaning of "testimonial" equates with "accusatory." Furthermore, it is a dubious conclusion that the prosecutor's evidence could ever be "neutral" in the context of the adversarial system in a criminal proceeding. "The Framers would be astounded to learn that *ex parte* testimony could be admitted against a criminal defendant because it was elicited by 'neutral' government officers." Crawford, 541 U.S. at 66.

Giving a trial judge the discretion to determine whether a statement is "accusatory" or "neutral" smacks of the "open ended balancing" reliability analysis the Court rejected in Crawford: "The Roberts test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability . . . [and] replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one." Id. at 62. The Supreme Court warned that these were the very kinds of "vague" and "manipulable" standards the Framers "were loath to leave . . . in judicial hands." Id. at 67. Thus, the Court rejected the general concept of "replacing categorical constitutional guarantees with open-ended balancing tests" and held that those tests "do violence to [the Framers'] design." Id. at 67-68. According to the Supreme Court, the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Id. at 61. Thus, the Supreme Court explicitly and "once again reject[ed] the

view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon 'the law of Evidence for the time being.'" Id. at 50-51. These rulings perforce reject injecting a manipulable evidentiary standard to avoid the constitutional command of Crawford, which the majority opinion does under the guise of characterizing the evidence as "neutral" or "not accusatory."

The relevant factor under Crawford is that this evidence was generated to discover and report evidence against Luginbyhl, the accused. It then was used at trial for that purpose without the opportunity of cross-examination. Furthermore, whether the evidence is accusatory or neutral, it does "bear testimony," 541 U.S. at 51; it was prepared for use at trial by a government agent; it was a substitute for an actual witness; and it was admitted in evidence without the opportunity of cross-examination. Simply put, "[a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." Id. at 61.

The majority opinion cites several appellate courts that have ruled affidavits to be nontestimonial. Other appellate courts, however, addressing this precise issue, have ruled that similar affidavits are testimonial and barred by Crawford. See, e.g., Shiver v. State, 900 So. 2d 615, 618 (Fla. App. 2005) (holding that a breath test affidavit "contained statements one would reasonably expect to be used prosecutorially, . . . was made under circumstances which would lead an objective witness to reasonably believe the statements would be available for trial," and was testimonial); City of Las Vegas v. Walsh, 91 P.3d 591, 595 (Nev. 2004) (holding that an affidavit "offered to prove certain facts concerning use of certain devices . . . related to determining presence of alcohol" is one prepared for use at trial and is testimonial); People v. Rogers, 780 N.Y.S.2d 393 (N.Y. App. Div. 2004) (holding that a blood test report "generated by the desire to discover evidence against defendant" was testimonial). In any event, to decide this case, we need not go beyond the text of Crawford. Plainly understood, the language in Crawford

leads to the conclusion that this certificate of analysis is testimonial just as "affidavits . . . the defendant was unable to cross-examine." 541 U.S. at 51. As the Supreme Court noted, "[w]here testimonial statements are involved, we do not . . . leave the Sixth Amendment's protection to the vagaries of the rules of evidence." Id. at 61. In other words, "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." Id. at 62.

For these reasons, I would hold that the admission of the document violated Luginbyhl's rights as protected by the Confrontation Clause.